UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

**FILED**
JUL 2 3 2012
CLERK  Mm
United States Bankruptcy Court
San Jose, California

| | |
|---|---|
| In Re: ) | |
| ) | |
| DEEPAK CHOPRA, ) | Case No. |
| ) | 10-52819 |
| Debtor. ) | |
| _____ ) | |
| ) | |
| IQBAL HUSAIN, ) | Volume 1 |
| ) | PP. 1-217 |
| Plaintiff, ) | |
| ) | |
| v. ) | Adv. Proceeding No. |
| ) | 10-05196 |
| DEEPAK CHOPRA, ) | |
| ) | |
| Defendant. ) | **ORIGINAL** |
| ) | |
| _____ ) | |

DEPOSITION OF DEEPAK CHOPRA

DATE:           January 18, 2012

TIME:           10:03 a.m.

LOCATION:       Berliner Cohen
                Ten Almaden Boulevard
                Suite 1200
                San Jose, CA   95113

REPORTED BY:    Peter D. Torreano, CSR, CRR
                Certified Shorthand Reporter
                License Number C-7623

TORREANO SHORTHAND REPORTING

1999 S. BASCOM AVENUE
SUITE 700
CAMPBELL, CA 95008
MAIN  408.371.0464
FAX   408.371.0402

Case: 10-05196   Doc# 103   Filed: 08/10/12   Entered: 08/10/12 15:17:40   Page 1 of 20

```
 1                A P P E A R A N C E S:

 2    For the Plaintiff:

 3          Berliner Cohen
            By:   MARCO M. CAMPAGNA
 4          marco.campagna@berliner.com
            Ten Almaden Boulevard
 5          Suite 1100
            San Jose, CA   95113
 6          (408) 286-5800

 7    For the Debtor and Defendant:

 8          Ison Law Offices
            By:   NEIL ISON
 9          isonlaw@yahoo.com
            P.O. Box 700622
10          San Jose, CA   95170
            (408) 621-6800
11
      Also present:
12
            IQBAL HUSAIN
13

14

15

16

17

18

19

20

21

22

23

24

25
```

## EXHIBIT INDEX (BOUND SEPARATELY)

| EXHIBIT | | MAR |
|---|---|---|
| 1 | Updated Notice of Taking Deposition of Deepak Chopra | 91 |
| 2 | Complaint to Determine Dischargeability of Debt | 94 |
| 3 | Accounts Receivable Financing Agreement | 126 |
| 4 | Agreement for Sale of Stock | 169 |
| 5 | Promissory Note | 170 |
| 6 | E-mail from Gill to Husain, dated February 23, 2005 | 175 |
| 7 | Check No. 355318 | 177 |
| 8 | Deposit Summary | 179 |
| 9 | Check No. 10098352 | 181 |
| 10 | Deposit Summary | 183 |
| 11 | Check No. 282585 | 183 |
| 12 | Deposit Summary | 184 |
| 13 | Check No. 363744 | 185 |
| 14 | Deposit Summary | 185 |
| 15 | Check No. 352521 | 186 |
| 16 | Deposit Summary | 186 |
| 17 | SearchTech Medical, Inc. 1000 BofA I Transaction Detail | 188 |
| 18 | Iqbal's Funding Sheet | 199 |

```
 1   San Jose, California              January 18, 2012
 2                    P R O C E E D I N G S
 3                       DEEPAK CHOPRA,
 4   called as a witness, after having been duly sworn by
 5   the Certified Shorthand Reporter to tell the truth, the
 6   whole truth, and nothing but the truth, testified as
 7   follows:
 8                        EXAMINATION
 9   BY MR. CAMPAGNA:
10       Q.   Good morning.  As you know, my name is Marco
11   Campagna and I represent Iqbal Husain in this adversary
12   proceeding.
13            Would you please state and spell your name for
14   the record.
15       A.   D-E-E-P-A-K.  C-H-O-P-R-A.  Deepak Chopra.
16       Q.   Mr. Chopra, what is your address?
17       A.   15091 Becky Lane, Monte Sereno, California.
18       Q.   Your telephone number?
19       A.   (408) 656-3311.
20       Q.   Do you have a work address?
21       A.   15091 Becky Lane, Monte Sereno, California
22   95030.
23       Q.   Same as the residence address?
24       A.   Yes, same.
25       Q.   Any other residence address?
```

```
 1      A.   No.
 2      Q.   And your date of birth?
 3      A.   9/29/52.
 4      Q.   How long have you lived at the address on
 5   Becky Lane?
 6      A.   Since 1993.
 7      Q.   Continuously?
 8      A.   Yes.
 9      Q.   Who do you live there with?
10      A.   Me and my kids, one kid.
11      Q.   You live there with one -- one child?
12      A.   And some renters.
13      Q.   And some renters.  You said you have two
14   children?
15      A.   Yes.
16      Q.   What are their names?
17      A.   Sonia Chopra.
18      Q.   S-O-N-I-A?
19      A.   I-A.
20      Q.   How old is Sonia?
21      A.   She is 19.
22      Q.   Your other child?
23      A.   Evan, E-V-A-N, Chopra.  And he's 12.
24      Q.   So you live in Monte Sereno with Evan?
25      A.   Evan.
```

```
 1      Q.  You no longer live with Sonia?  Sonia no
 2  longer lives with you?
 3      A.  No.
 4      Q.  Where does she live?
 5      A.  She lives with her mom.
 6      Q.  So I take it you're divorced?
 7      A.  Yes.
 8      Q.  And the mother's name is?
 9      A.  Kathleen.
10      Q.  Would you spell that, please.
11      A.  K-A-T-H-L-E-E-N.
12      Q.  How long have you been divorced?
13      A.  Two, two and a half years.
14      Q.  How long were you married before you were
15  divorced?
16      A.  29 years.  29 years.
17      Q.  Do you have any siblings?  Any brothers and
18  sisters?
19      A.  Yes.
20      Q.  How many?
21      A.  One sister, one sister.
22      Q.  One sister?
23      A.  Uh-huh.
24      Q.  What's her name?
25      A.  J-Y-O-T-I.
```

```
1       Q.  Jyoti?
2       A.  Yes.  Khurana, K-H-U-R-A-N-A.
3       Q.  K-H-U-R-A-N-A?
4       A.  Yeah.
5       Q.  Where does Ms. Khurana live?
6       A.  15071 Becky Lane, Monte Sereno, California
7  95030.
8       Q.  Is she one of your renters?
9       A.  No.
10      Q.  She lives at the home with you?
11      A.  No.
12      Q.  This is a different address?
13      A.  Yes.
14      Q.  I think I'm focusing on the Becky Lane.
15      A.  Uh-huh.
16      Q.  So how far is this home?  Is she neighbors?
17      A.  Neighbors.
18      Q.  Contiguous?  Share a property line?
19      A.  Yes.
20      Q.  Okay.  What does Jyoti do for a living?
21      A.  She is a housewife.
22      Q.  I understand that you're represented by
23  counsel, Mr. Neil Ison, the gentleman sitting to your
24  right.  I presume that he's had an opportunity to
25  explain the deposition process to you before today; is
```

1  that right?
2      A.   Yes.
3      Q.   Did you spend any time preparing for the
4  deposition today?
5      A.   No, not today.  Yesterday.
6      Q.   Prior to today's deposition did you spend any
7  time preparing for it?
8      A.   Yes.
9      Q.   And that was yesterday.  How long did you
10 spend?
11     A.   A couple of hours.
12     Q.   With Mr. Ison?
13     A.   Yes.
14     Q.   I want to be clear that what you're giving
15 today is testimony and it's the type of testimony that
16 has the same force and effect as if you were giving it
17 in court.
18     A.   Uh-huh.
19     Q.   Do you understand that?
20     A.   Yes.
21     Q.   At the end of your deposition, which may go
22 past today, but at the end of it you'll have an
23 opportunity to review your testimony.  The court
24 reporter, Mr. Torreano, and his staff will prepare the
25 transcript at which time you'll have a chance to review

1  it, make any changes and then submit those changes.

2  If there are changes, particularly if there's
3  substantive changes other than ones that are maybe
4  grammatical, just know that you will be questioned
5  about those substantial changes.  So it's important
6  that the testimony that you give today is as accurate
7  as -- as it can be.

8  I'm going to be asking the questions as I have
9  been.  Before you answer a question I'd like for you to
10 understand the question.  If at any time you don't
11 understand the question, you may ask me to clarify or,
12 if you don't hear the question, we can have the court
13 reporter read the question back.

14 It's helpful to give yes-or-no answers or even
15 short answers.  If at any time you need to explain an
16 answer that you previously gave, that's also
17 permissible.  You could just ask that you would like to
18 explain a previous question.  We can look it up on the
19 record, if that's helpful, or, if you remember what it
20 was, you can just go ahead and explain.

21 Is there anything that's preventing you from
22 testifying today to the best of your ability?
23     A.  No.
24     Q.  Have you consumed any drugs or alcohol today?
25     A.  No.

1  Q. I have questions about your experience as a
2  witness. Have you ever given testimony in court
3  before?
4  A. I don't recollect.
5  Q. What I mean by "court," that's literally when
6  you've gone to the courthouse, you've been in front of
7  a judge or a judge pro tem. Somebody has asked you to
8  raise your right hand, as Mr. Torreano did here today,
9  and then proceeded to administer an oath and have you
10 give testimony.
11        THE DEPONENT: Can you talk to me?
12        MR. ISON: Yes, you can talk to me.
13        I haven't been there.
14        THE DEPONENT: So no, no.
15 BY MR. CAMPAGNA:
16  Q. Have you ever given a deposition before like
17 what you're doing today?
18  A. Yes.
19  Q. When?
20  A. Six months ago.
21  Q. What were the issues in that case where you
22 gave the deposition?
23  A. It was employment issues, employment case.
24  Q. Who were the lawyers in that case?
25  A. I think it's Mr. Malispino.

```
 1        Q.  Can you spell that?
 2        A.  M-A-R-I-P-I-N-O.  Malispino.
 3        MR. ISON:  Let me spell that for you.
 4   Malispino, M-A-L-I-S-P-I-N-O.
 5   BY MR. CAMPAGNA:
 6        Q.  Anybody else?  Was Mr. Ison involved in that
 7   case?
 8        A.  Yes.
 9        Q.  Representing you?
10        A.  Yes.
11        Q.  What was the case name?
12        A.  Kasey Taylor was the --
13        Q.  Is that Casey with a C or Kasey with a K?
14        A.  K.  Kasey Taylor versus Deepak Chopra and Gary
15   Sekhon.
16        MR. ISON:  S-E-K-H-O-N.
17   BY MR. CAMPAGNA:
18        Q.  What was Mr. Sekhon's first name?
19        A.  Gary.  G-A-R-Y.
20        Q.  What court was that case in?
21        A.  It was in the bankruptcy court.
22        MR. ISON:  It was in the bankruptcy court, but
23   it was removed to the Superior Court, Santa Clara
24   County.
25        THE DEPONENT:  It was removed, yeah.  It was
```

```
 1  bankruptcy court and it went back in the Superior
 2  Court.
 3  BY MR. CAMPAGNA:
 4       Q.   How long did that deposition last?
 5       A.   Four hours maybe.
 6       Q.   Have you given any depositions other than the
 7  deposition in the Kasey Taylor case?
 8       A.   Yes.
 9       Q.   When did you give those other depositions?
10       A.   Three, four -- I don't recollect.
11       Q.   Let me ask you this:  How many depositions
12  have you given ever?
13       A.   Three, maybe three.  Best of my knowledge, two
14  or three.
15       Q.   Including the Taylor one?
16       A.   Yes, yes.
17       Q.   So one or two others than the Kasey Taylor?
18       A.   Yes.
19       Q.   Do you recall what cases those were in?
20       A.   They were in Marin County.
21       Q.   Both of them were in Marin County?
22       A.   Yes.
23       Q.   What were the issues in those cases?
24       A.   Money issues.  What do you call it?  Money,
25  sued for money.
```

1  Q. Mr. Chopra, I understand you're looking at
2  Mr. Ison. That's fine. I just want to explain
3  something. It's fine that you're looking at Mr. Ison
4  because he's your lawyer and he may have information
5  that you have or that you'd like to have as well.
6      The testimony really does need to come from
7  you. I'm not opposed at times if you need to break to
8  discuss something with Neil. We can go off the record
9  and that might help to jog your recollection. I prefer
10 not to do that so we can keep things moving.
11     So I'm just trying just to the best of your
12 recollection what you think those cases were about.
13 A. They were about money owed by SearchTech
14 Medical.
15 Q. So there were two Marin County Superior Court
16 cases?
17 A. Depositions I gave.
18 Q. Okay. Let me back up for a second.
19     There are two separate cases?
20 A. There was one case.
21 Q. One case?
22 A. And to the best of my knowledge, I gave two
23 depositions.
24     MR. CAMPAGNA: In the same case?
25     Is that accurate, Mr. Ison?

1    MR. ISON: I wasn't representing him for that,
2    but it sounds about right.
3    MR. CAMPAGNA: So you really don't know on
4    that. Okay.
5    BY MR. CAMPAGNA:
6    Q. So one case, two depositions, and it was about
7    SearchTech?
8    A. Medical.
9    Q. Owing money?
10   A. Yes.
11   Q. How much money -- was -- was SearchTech owing
12   in that case?
13   A. 250,000.
14   Q. Who was claiming the money owed?
15   A. Mr. Flowers.
16   Q. What's Mr. Flowers' first name?
17   A. Sylvester.
18   Q. So Mr. Flowers sued SearchTech Medical in
19   Marin County?
20   A. Yes.
21   Q. You stood for two depositions in that case?
22   A. To the best of my knowledge.
23   Q. And it was about two or three years ago?
24   We're early 2012 now. So was it 2009?
25   A. I would say 2009, 2000 -- no. It would be

```
 1   further.  Maybe 2008.
 2       Q.  Sometime in 2008?
 3       A.  Yeah.
 4       Q.  Other than the deposition that you gave in the
 5   Taylor case and the two depositions that you gave in
 6   the Flowers case, any other depositions?
 7       A.  No.
 8       Q.  And when you say that you gave two depositions
 9   in the Flowers case, to the best of your recollection,
10   was it two separate depositions or was it a deposition
11   over two days?
12       A.  There was two separate depositions.
13       Q.  Do you recall the lawyers who took those
14   depositions?
15       A.  No, I don't.
16       Q.  They were lawyers for Mr. Flowers?
17       A.  Yes.
18       Q.  Both of them?
19       A.  Yes.
20       Q.  And they were different lawyers?
21       A.  I can't recollect that.
22       Q.  How did the Flowers case resolve?
23       A.  It just went away in the bankruptcy court.  It
24   went away in the bankruptcy court.
25       Q.  You're saying that the $250,000 that was owed
```

1  to Mr. Flowers, that he alleged was owed to him was
2  discharged in bankruptcy?
3      A.  Yes.
4      Q.  Did you have any agreements with Mr. Flowers
5  outside of the bankruptcy court to resolve any part of
6  that 250,000?
7      A.  No.
8      Q.  And the 250,000, that originated how, that
9  debt?
10     A.  That was loaned to the company.
11     Q.  At one time?
12     A.  Yes.
13     Q.  A single $250,000 loan transaction?
14     A.  Two transactions, I think, yes, to the best of
15 my knowledge.
16     Q.  Do you recall what year?
17     A.  2003, 2004.  Best of my knowledge.
18     Q.  Do you recall whether SearchTech or you made
19 any payments on the $250,000 loan?
20     A.  No.
21     Q.  Do you recall when the loan was due?
22     A.  No.
23     Q.  Was it due at the time that Mr. Flowers filed
24 a lawsuit on it?
25     A.  I don't recollect.

| | |
|---|---|
| 1 | Q. The case with Kasey Taylor, was that a case |
| 2 | that also involved money that was owed? |
| 3 | A. That was an employment issue. |
| 4 | Q. What was the employment issue? |
| 5 | A. It was harassment. |
| 6 | Q. Anything else? |
| 7 | A. That's the best of my knowledge. |
| 8 | Q. So she -- so Ms. Taylor sued you and |
| 9 | Mr. Sekhon, S-E-K-H-O-N, for harassment? |
| 10 | A. Yes. |
| 11 | Q. Was that a single cause of action, single |
| 12 | claim? |
| 13 | A. I -- I don't know. I can't recollect single. |
| 14 | Q. Aside from the Mr. Flowers case in Marin that |
| 15 | was ultimately discharged in bankruptcy and the Kasey |
| 16 | Taylor case, have you been sued? |
| 17 | A. Other cases? |
| 18 | Q. Yes. |
| 19 | A. Yes. |
| 20 | Q. Okay. What were those cases? |
| 21 | A. The one I recollect is Tara. I don't know her |
| 22 | last name. |
| 23 | Q. Could you spell the first name? |
| 24 | A. T-A-R-A. |
| 25 | Q. Okay. This is a woman by the name of Tara? |

1    A.    Yes.

2    Q.    Why did she sue you?

3    A.    Harassment.

4    Q.    This was also -- this was also an employment
5  issue?

6    A.    Employment issue.

7    Q.    How long ago was that?

8    A.    I don't recollect. I suppose 2005.

9    Q.    And I appreciate you saying that you don't
10 recollect and you're trying to give a date. What I
11 wouldn't want you to do is guess. So I do want you to
12 give your testimony based on your best estimate when it
13 comes to something like that, like time. Maybe we can
14 create frames of reference to help identify what that
15 time period is. I don't want you to throw out a date
16 unless you think that that is your best estimate.
17        So your best estimate is that Tara had sued
18 you for harassment sometime in 2005?

19   A.    Right.

20   Q.    And that was prior to the filing by Kasey
21 Taylor?

22   A.    Yes.

23   Q.    And it's unrelated to the filing by Kasey
24 Taylor?

25   A.    Yes.

```
 1    Q.  Were they co-workers, Ms. Taylor and Tara?
 2    A.  No.
 3    Q.  And how did that case resolve, the one
 4  involving Tara?
 5    A.  We settled.
 6    Q.  And when you say you settled, it was you
 7  personally or was this Gary Sekhon also involved?
 8    A.  What case are you talking about?
 9    Q.  Tara.
10    A.  Gary was not involved in Tara.  That was a
11  much later case.  Tara was a 2005 case.
12    Q.  And Kasey was when?
13    A.  2008, to the best of my knowledge, yeah.
14    Q.  You settled both of these cases?
15    A.  Yes.
16    Q.  Did the settlement involve you paying these
17  people?
18        MR. ISON:  I'm going to object.  The
19  settlements in both cases are confidential.
20        MR. CAMPAGNA:  Are you instructing your client
21  not to answer?
22        MR. ISON:  Yes.
23  BY MR. CAMPAGNA:
24    Q.  So the original question in this line of
25  questioning was have you ever been sued before aside
```

```
 1   from the Taylor case and the Flowers case.  And you
 2   mentioned Tara.
 3           So any other lawsuits against you?
 4       A.  Several.
 5       Q.  What were those?
 6       A.  I can't recollect all of them.
 7       Q.  Which ones can you recollect?
 8       A.  Dr. Chadha.
 9       Q.  Pardon?
10       A.  Dr. Chadha.
11       Q.  Can you spell his name.
12       A.  C-H-A-D-H-A.
13       Q.  Is that Dr. Pawan Chadha?
14       A.  Pawan Chadha.
15       Q.  Can you spell Pawan?
16       A.  P-A-W-A-N.
17       Q.  P-A-W-A-N?
18       A.  Yes.
19       Q.  When did he sue you?
20       A.  In the bankruptcy court in 2009.
21       Q.  Okay.  Why did he sue you?
22       A.  For money issues.
23       Q.  What were the money issues?
24       A.  Money owed.
25       Q.  How much?
```