```
1        A.   I don't recollect.  It was all over the map.
2   I don't recollect the amount he sued me for.
3        Q.   Was it more than $100,000?
4        A.   Yes, it was more than $100,000.
5        Q.   Was it more than $250,000?
6        A.   I don't recollect.
7        Q.   Is it more than $150,000?
8        A.   Yeah.  More than $150,000.
9        Q.   More than $400,000?
10       A.   I don't remember how much it was for because I
11  never looked at the number.
12       Q.   Your best estimate?
13       A.   Maybe about four or five hundred thousand
14  dollars.
15       Q.   What happened with that case?
16       A.   It settled.
17       Q.   Settled.  Okay.  You said this was in the
18  bankruptcy court?
19       A.   Uh-huh.
20       Q.   How much did you settle for?
21            MR. ISON:  Objection.  It's a confidential
22  settlement.
23            MR. CAMPAGNA:  Are you instructing your client
24  not to answer?
25            MR. ISON:  Yes.
```

BY MR. CAMPAGNA:

Q. What other cases?

A. Raj Jindia. R-A-J, Z-I-N-D-I-A -- or J-I-N-D-I-A.

Q. Okay. When did Raj Jindia sue you?

A. In the bankruptcy court sometime in June of 2009.

Q. Was this also money owed?

A. Money owed.

Q. Approximately how much money was owed?

A. About 140,000.

Q. How do you recall the 140,000 that was owed to Raj Jindia?

A. Because it was a very simple thing, 140 owed.

Q. What made it simple?

A. I said 140.

Q. No, that's good. I appreciate that you're recollecting because it makes the testimony clear. I'm just understanding there was one case, the previous case, where it was more difficult to recollect, but there's seemingly something that jogged your memory.

So where was it that it was simply stated 140 owed?

A. On the documents.

Q. When you say "the documents," would that be

22

```
 1   the complaint?
 2        A.   Complaint.
 3        Q.   Was this on a promissory note?
 4        A.   A promissory note.
 5        Q.   What was the nature of the promissory note?
 6        A.   It was a secured note.
 7        Q.   Secured how?
 8        A.   Three properties.
 9        Q.   Two properties?
10        A.   Three properties.
11        Q.   Three properties.  Which properties?
12        A.   I don't recollect that.
13        Q.   Do you still own the properties?
14        A.   They are in foreclosure.
15        Q.   They are in foreclosure?  Who's foreclosing on
16   them?
17        A.   Bank of America.
18        Q.   On all three?
19        A.   I think two are -- one may have foreclosed
20   already.  So two are not foreclosed yet.
21        Q.   Bank of America is foreclosing on one of
22   them?
23        A.   Two of them.
24        Q.   Is foreclosing on two of them?
25        A.   Yes.
```

1   Q.  If I heard you correctly earlier, you said
2  that one is in foreclosure and two are not in
3  foreclosure; is that correct?
4   A.  One is foreclosed --
5   Q.  One has been foreclosed.  I may have
6  misunderstood.  Thank you for clarifying.
7       And Bank of America foreclosed on that one
8  already?
9   A.  Yes.  It was Countrywide.
10   Q.  Countrywide?
11   A.  Yeah.
12   Q.  And Bank of America is in the process of
13  foreclosing on one of the other --
14   A.  Two of the others.
15   Q.  On two of the others.
16       Did you pay Raj Jindia 140,000 after he sued
17  you?
18       MR. ISON:  Objection.  It's a settlement which
19  is confidential and I instruct the witness not to
20  answer.  Also not relevant nor is it reasonably
21  calculated to lead to the discovery of admissible
22  evidence under Evidence Code section 472 -- 36.  Never
23  mind.  I forgot the number.
24  BY MR. CAMPAGNA:
25   Q.  What was the nature of the promissory note

1  that Raj Jindia -- that I presume you gave to Raj
2  Jindia?
3      A.  Chopra Enterprises gave to Raj Jindia.
4      Q.  Okay.
5      A.  There was an unsecured note which was secured
6  later by three properties.
7      Q.  This is Chopra Enterprises --
8      A.  Corporation.
9      Q.  -- Corporation?
10         When did Chopra Enterprises Corporation give
11 Raj Jindia the $140,000 promissory note?
12     A.  I don't recollect the date.
13     Q.  Approximately?
14     A.  2006.
15     Q.  What was the purpose of the $140,000 from Raj
16 Jindia?
17     A.  Invest in properties.
18     Q.  Was he investing in properties other than the
19 three that ended up securing the note?
20     A.  No.  He was just investing in properties for
21 Chopra Enterprises Corporation.
22     Q.  How did it come to be that previously
23 unsecured note was later secured?
24     A.  We secured it for him.
25     Q.  Why was that?

1  A. Just to give him security. He wanted some
2  security and Chopra Enterprises secured it for him.
3  Q. Was that sometime after that promissory note
4  had originally become due?
5  A. I don't recollect that.
6  Q. Do you recall when that promissory note became
7  due?
8  A. No, I don't recollect that.
9  Q. Is it possible that at the time you offered
10 security for that promissory note that the note had
11 become due and Mr. Jindia was requiring additional
12 security?
13 A. I don't recollect that.
14 Q. My question was is it possible?
15 A. I don't know. I don't know if it's possible.
16 I can't recollect.
17 Q. Other lawsuits?
18 A. Tharwani. T-H-A-W-A-N-I (sic).
19 Q. W-A-N-I?
20 A. Yes.
21 Q. That's a first name or a last name?
22 A. Last name.
23 Q. What's the first name?
24 A. Ashraf, A-S-H-R-A-F.
25 Q. When did Ashraf Tharwani sue you?

26

```
 1    A.   The bankruptcy court.
 2    Q.   In June of 2009?
 3    A.   I filed in -- yeah.  June of 2009.
 4    Q.   This was also money owed?
 5    A.   Money owed.
 6    Q.   How much?
 7    A.   I don't recollect.
 8    Q.   Approximately?
 9    A.   I don't recollect.  Several transactions.
10    Q.   Was it more than $100,000?
11    A.   Yes.
12    Q.   Was it more than $200,000?
13    A.   No.
14    Q.   Was it more than $150,000?
15    A.   Just 250,000.
16    Q.   But less than 150,000.  Why was Ashraf
17 Tharwani claiming that you owed him approximately but
18 less than $150,000?
19    A.   There were different transactions that were
20 made.
21    Q.   What kind of transactions?
22    A.   Real estate transactions.
23    Q.   Was the 150 -- was any of it in a promissory
24 note as with Jindia?
25    A.   Some of them were in a promissory note.
```

1  Q.  Approximately how much was in a promissory
2  note, your best estimate?
3  A.  100K.  $100,000.
4  Q.  Was that a single promissory note?
5  A.  Yes.
6  Q.  At the time of the lawsuit in 2009 had you
7  made any payments on the promissory note?
8  A.  Yes.
9  Q.  About how many?
10 A.  40,000.
11 Q.  At the time of the lawsuit was the note due?
12 A.  Yes.
13 Q.  How long had the note been due?
14 A.  I don't recall.
15 Q.  Prior to the -- prior to June 2009?
16 A.  I don't recollect that.
17 Q.  More than a year?
18 A.  I can't recollect that.
19 Q.  More than two years?
20 A.  No.  I don't recollect.  I have no
21 recollection of that note of how much was due because
22 we settled on that.
23 Q.  When did you settle?
24 A.  Four, five months ago -- no, a year ago,
25 sorry.  A year ago we settled it.  January of 2011.

1   Q.  Do you have a copy of that note?
2   A.  I should -- I may have a copy of that note.
3   Q.  Did you bring a copy of the note with you
4   today?
5   A.  No.
6   Q.  Other lawsuits?
7   A.  Credit card lawsuits.  Several of them.  I
8   can't recollect.
9   Q.  Credit card lawsuits?
10  A.  Yeah.
11  Q.  Any other non-credit card lawsuits?
12  A.  Several of them.
13  Q.  Okay.
14  A.  I can't recollect all of them.  There are
15  small amounts.  Small amounts.
16  Q.  What would you say is a small amount?
17  A.  20,000 maybe.
18  Q.  How did the credit card lawsuits resolve?
19  A.  I settled with some of them.
20  Q.  And the ones that you didn't settle?
21  A.  I put it through bankruptcy.
22  Q.  And how about the other lawsuits that involve
23  small amounts; how did those resolve?
24  A.  I settled some of them.
25  Q.  About how many of them did you settle?

29

1   A.  Maybe two or three.

2   Q.  Do you recall the names of the people that you

3   settled with?

4   A.  No, I don't recall the names.

5   Q.  Were they any of the names that have been

6   mentioned already today in this deposition?

7   A.  No.  No.

8   Q.  You don't recall any other lawsuits besides

9   Flowers, Taylor, Tara, Chadha, Jindia, Tharwani, the

10  credit card lawsuits and the ones involving small

11  amounts of $20,000 or so; is that correct?

12  A.  You mentioned Flowers; right?

13  Q.  Yes.

14  MR. ISON:  Let me help here.  There was

15  Narinder Bains and then the numbers -- the sixth

16  lawsuit that was never brought as an adversary

17  proceeding.  I can't remember that guy's name.

18  THE DEPONENT:  Narinder Bains was another

19  lawsuit I said.  We had several other lawsuits.

20  MR. ISON:  You haven't mentioned Narinder

21  Bains yet.

22  THE DEPONENT:  No, but Narinder Bains is one

23  of the lawsuits that I said I don't remember.  That's

24  Narinder Bains.

25  //

BY MR. CAMPAGNA:

Q. Is that one of the small amounts or is it a different amount?  Let me -- that's fine.  I'm going to ask a different question.

You're recollecting that Narinder Bains also sued you?

A. Yes.

Q. Why did he sue you?

A. For money owed.

Q. And this is B-A --

A. -- I-N-S.

Q. B-A-I-N-S?

A. Yes.

Q. How much money?

A. It was -- there was a lot of real estate transactions.  So I don't have the real figure on that.

Q. Your estimate of it?

A. My estimate of it?

Q. Yes.

A. About $200,000.

Q. This was not an adversary proceeding; is that correct?

A. Yes.

Q. When did Narinder Bains sue you?

```
 1      A.   Early 2009.
 2      Q.   Prior to your filing bankruptcy?
 3      A.   Yes.
 4           I'm trying to recollect other lawsuits.
 5           MR. ISON:  Well, there's the sixth one that
 6   they never served, the one you were just --
 7           MR. CAMPAGNA:  We'll come back to the sixth
 8   one.  I have some questions about the Narinder Bains
 9   lawsuit.
10           MR. ISON:  The sixth case.
11           THE DEPONENT:  Ram?
12           MR. ISON:  Yeah, Ram.
13           THE DEPONENT:  Go ahead.
14   BY MR. CAMPAGNA:
15      Q.   What was the sixth case that you and Mr. Ison
16   were talking about?
17      A.   Ram Kanwar.
18      Q.   Can you spell that?
19      A.   R-A-M.  Kanwar, K-A-N-W-A-R.
20      Q.   Okay.  Ram Kanwar sued you?
21      A.   Sued me.
22      Q.   You personally?
23      A.   Me and Dr. Pawan Chadha.
24      Q.   When did Mr. Kanwar sue you and Dr. Chadha?
25      A.   Sometime three months ago, four months ago.
```

1  Q. Okay. Why did Ram Kanwar sue you and
2  Dr. Chadha?
3  A. Because I introduced Dr. Chadha to Ram
4  Kanwar.
5  Q. How did your introduction of Dr. Chadha to
6  Mr. Kanwar result in a lawsuit by Mr. Kanwar against
7  the two of you?
8  A. I don't know, but he is -- to the best of my
9  knowledge, he's dismissed my name from the lawsuit
10  now.
11  Q. So, as far as you know, you're no longer a
12  party to that lawsuit?
13  A. That's what I've been told.
14  Q. By whom?
15  A. By him. And I have not been served. No
16  action has been taken. You can ask Neil Ison about
17  it.
18  Q. Going back to the Narinder Bains lawsuit, you
19  had mentioned that that case was also about money owed,
20  approximately 200,000. He filed a lawsuit in early
21  2009.
22  Why did he sue you?
23  A. He claimed I owed him some money on real
24  estate transactions.
25  Q. Did he sue you personally?

```
 1    A.   He sued me personally.
 2    Q.   Were there any other defendants in that case?
 3    A.   I don't recollect.
 4    Q.   Did you owe him approximately $200,000?
 5    A.   I don't think so.
 6    Q.   And what happened in that case?
 7    A.   Dismissed.  Gone.
 8    Q.   Dismissed how?
 9    A.   Through bankruptcy.
10    Q.   He filed an adversary proceeding?
11    A.   No.
12    Q.   He did not file an adversary proceeding?
13    A.   No.
14    Q.   When was that case dismissed?
15    A.   I saw it on the Internet.  It says post.  I
16 don't know what that means.
17    Q.   So he sued you in early 2009 in Superior
18 Court; is that right?
19    A.   Yes.
20    Q.   Was this lawsuit dismissed prior to you filing
21 for bankruptcy?
22    A.   No.
23    Q.   Did you settle with Mr. Bains as a result of
24 the lawsuit being filed?
25    A.   No.
```

1  Q. Did you ever pay anything to Mr. Bains after
2  he sued you?
3  MR. ISON: I need to have a conference with my
4  client.
5  Let's step outside for a second.
6  (Pause in the proceedings.)
7  MR. ISON: Mr. Chopra wants to revise his
8  testimony a bit.
9  BY MR. CAMPAGNA:
10  Q. Mr. Chopra, now that you've had a chance to
11  consult with your attorney out of the room, what would
12  you like to revise in regards to the testimony
13  involving the Bains case?
14  A. We settled.
15  Q. You settled the Bains case. Do you recall
16  when you settled the Bains case?
17  A. Six months ago.
18  Q. Was this prior to your bankruptcy discharge?
19  A. After my bankruptcy discharge.
20  Q. I may have to check the timeline. I want to
21  make sure I've got my facts straight.
22  I have here that Narinder Bains filed a
23  lawsuit against you in early 2009 prior to the
24  bankruptcy; is that correct?
25  A. Correct.

```
 1        Q.   You filed for bankruptcy in March of 2009?
 2        A.   Yes.
 3        Q.   Is that correct?
 4             Mr. Bains did not bring an adversary
 5   proceeding in bankruptcy against you?
 6        A.   No.
 7        Q.   But prior to your bankruptcy being discharged,
 8   you settled with Mr. Bains?
 9        A.   My bankruptcy was discharged in 2010,
10   September.
11        Q.   Okay.
12        A.   I settled with Mr. Bains this year sometime.
13   In good faith I settled with him.
14        Q.   Was there a written settlement agreement with
15   Mr. Bains?
16        A.   Yes.
17        Q.   And what do you mean when you say you settled
18   in good faith with him?
19        A.   I didn't have to pay him the money.
20        Q.   Why do you say you didn't have to pay him the
21   money?
22        A.   Because we discharged in bankruptcy court.
23        Q.   So Mr. Bains was a lucky guy; is that what
24   you're saying?
25             MR. ISON:   Objection.   Misstates his
```

1    testimony.  Don't answer that question.
2    BY MR. CAMPAGNA:
3        Q.   Do you understand the question when I ask you
4    if Mr. Bains was a lucky guy?
5        A.   I don't understand the part of "lucky."
6        Q.   Okay.  Then I can rephrase.  And I understand
7    your attorney is instructing you not to answer and an
8    instruction not to answer is reserved for questions
9    that are involving privacy or confidentiality as your
10   attorney had done earlier.
11            An instruction not to answer is not
12   appropriate for other types of questions to which there
13   may be a non-privacy or non-confidentiality type of
14   objection.
15            So I can rephrase the question.  And I know
16   that I was asking it in a colloquial fashion by using
17   the word "lucky."
18            So what I'm trying to ascertain is how is it
19   different that Narinder Bains that was discharged in
20   bankruptcy was paid something that you claim was no
21   longer owed to him?
22       A.   He's a very good friend of mine.
23       Q.   How long have you known Mr. Bains?
24       A.   Five years.
25       Q.   Do you still do business with Mr. Bains?