UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA **FILED**

SAN JOSE DIVISION

JUL 24 2012

CLERK
United States Bankruptcy Court
San Jose, California

In Re:                              )
                                    )
DEEPAK CHOPRA,                      )   Case No.
                                    )   10-52819
                Debtor.             )
                                    )
_____ )
                                    )
IQBAL HUSAIN,                       )   **ORIGINAL**
                                    )
                Plaintiff,          )
                                    )
        v.                          )   Adv. Proceeding No.
                                    )   10-05196
DEEPAK CHOPRA,                      )
                                    )
                Defendant.          )
                                    )
_____ )

DEPOSITION OF IQBAL HUSAIN


DATE:               February 1, 2012

TIME:               10:03 a.m.

LOCATION:           Residence of Deepak Chopra
                    15091 Becky Lane
                    Monte Sereno, CA  95030

REPORTED BY:        Peter D. Torreano, CSR, CRR
                    Certified Shorthand Reporter
                    License Number C-7623

1999 S. BASCOM AVENUE
SUITE 700
CAMPBELL, CA 95008

MAIN   408.371.0464
FAX    408.371.0402

TORREANO
SHORTHAND REPORTING, INC.

1                    A P P E A R A N C E S:

2    For the Plaintiff:

3            Berliner Cohen
             By:  MARCO M. CAMPAGNA
4            marco.campagna@berliner.com
             Ten Almaden Boulevard
5            Suite 1100
             San Jose, CA    95113
6            (408) 286-5800

7    For the Debtor and Defendant:

8            Ison Law Offices
             By:  NEIL ISON
9            isonlaw@yahoo.com
             P.O. Box 700622
10           San Jose, CA   95170
             (408) 621-6800

11

12   Also present:

             DEEPAK CHOPRA
13

14

15

16

17

18

19

20

21

22

23

24

25

2

Monte Sereno, California                    February 1, 2012

P R O C E E D I N G S

**IQBAL HUSAIN,**

called as a witness, after having been duly sworn by

the Certified Shorthand Reporter to tell the truth, the

whole truth, and nothing but the truth, testified as

follows:

**EXAMINATION**

BY MR. ISON:

     Q.   Okay.  Mr. Husain, my name is Neil Ison.  I'm

the attorney for Deepak Chopra in the action you've

bought in the adversarial proceeding against him in the

United States Bankruptcy Court for the Northern

District of California.

          This is my opportunity to ask you questions

about the case.  You're testifying under oath.  Do you

understand that?

     A.   I do.

     Q.   Is there any reason you cannot give your best

testimony today, illness, prescription drugs, or

anything like that?

     A.   No.

     Q.   Okay.  Have you had a chance to discuss the

nature of a deposition with your attorney before

today?

3

Case: 10-05196   Doc# 104   Filed: 07/24/12   Entered: 08/10/13 15:26:28   Page 3 of 28
TORREANO SHORTHAND REPORTING (866) 760-DEPO

1     A.   Yes.

2     Q.   And did you prepare for this deposition by

3 reviewing any documents?

4     A.   Whatever we've reviewed so far.

5     Q.   In other words, the exhibits that were put

6 forth in the deposition of Deepak Chopra?

7     A.   Right.

8     Q.   Did you review any other documents other than

9 those exhibits?

10    A.   No.

11    Q.   During this deposition I'm going to be asking

12 you questions and, if you do not understand a question

13 I ask, tell me.  Because if you answer it I'm going to

14 presume you understood the question.

15         Is that fair enough?

16    A.   Yes.

17    Q.   Now, sometimes during the course of a

18 deposition documents or other questions will refresh

19 your memory about something you've already testified

20 to.  It may cause you to want to change or supplement

21 your prior responses.  If that happens, I want you to

22 tell me and we'll go back over everything.

23         Do you understand that?

24    A.   Yes.

25    Q.   And at the end of the deposition I'm going to

1  ask you if there's any such changes or alterations that

2  you want to make to your deposition.  You'll have an

3  opportunity to do it at that time.

4         Do you understand that?

5     A.  Yes.

6     Q.  Okay.  Now, at the end of this deposition

7  there will be a transcript made of this deposition and

8  you'll have an opportunity to review that transcript.

9  You'll have an opportunity to make changes to the

10  transcript.

11         However, if you make changes, I will be

12  allowed to comment upon the fact that you gave an

13  answer at the deposition one way and changed it later

14  on.  It may or may not affect your case, but that's why

15  I think it's a good idea to review things during a

16  deposition and give your best testimony.

17         Do you understand that?

18     A.  Yes.

19     Q.  Okay.  Now, you brought a lawsuit for an

20  adversarial proceeding against Mr. Chopra in the United

21  States Bankruptcy Court; is that true?

22     A.  Yes.

23     Q.  And you did this through your first attorney,

24  mainly Mark Isola; is that true?

25     A.  Yes.

Case: 10-05196   Doc# 104   Filed: 07/24/12   Entered: 08/10/12 15:26:20   Page 5 of 28
TORREANO SHORTHAND REPORTING (866) 760-DEPO

1     Q.   There is another lawyer listed on this, Peter

2  Rehon.  Did you ever consult with Peter Rehon?

3     A.   No.

4     Q.   So was it true that your dealings with that

5  law firm were exclusively with Mark Isola?

6     A.   That is right.

7     Q.   Okay.  Now, Mr. Isola prepared a complaint.

8  Did you read that complaint before it was filed?

9     A.   More or less, yes.

10    Q.   Well, what do you mean "more or less"?

11    A.   I read portions of it, yeah.

12    Q.   Okay.  And did you disagree with anything in

13  that complaint?

14    A.   No.

15    Q.   Did you ask -- that's probably attorney-client

16  privilege.

17        I'm going to show you the complaint which has

18  been already put into evidence.  I have a copy of it

19  here.

20        MR. CAMPAGNA:  Exhibit 2.

21        MR. ISON:  Do you want to show him Exhibit 2.

22        And I think just as a matter of housekeeping

23  right now, Mr. Campagna, we had agreed that we would

24  use the same exhibit numbers for both depositions so

25  that we didn't have to reattach the exhibits to this

1   deposition.  Is that true?

2        MR. CAMPAGNA:  That's correct.  So we can just

3   refer to the two binders here that are in front of us

4   that have all of the exhibits in them.

5        MR. ISON:  Right.  And if I have additional

6   exhibits, we'll then have a separate book.  But we'll

7   continue numbering the exhibits from the last exhibit

8   number that we used in Mr. Chopra's deposition.

9        Is that acceptable?

10       MR. CAMPAGNA:  That's our agreement, yes.

11  BY MR. ISON:

12       Q.  Okay.  Mr. Husain, I want to ask you to read

13  that complaint to the extent you're not fully familiar

14  with it so that you'll be able to answer questions I'm

15  going to ask you about right now.

16       MR. CAMPAGNA:  You want him to read all six

17  and a half pages of it?

18       MR. ISON:  You know, that's a good point.

19       I'm going to be asking you questions mainly

20  about paragraph 11.  So if you could read over

21  paragraph 11.  That's (a) through (d).  And then that

22  will be a good starting point.  If I have other

23  questions, I'll refer you specifically to parts of the

24  complaint.

25       THE DEPONENT:  Okay.

1    BY MR. ISON:

2        Q.  Now, focusing your attention on paragraph

3    11(a), your allegations concern unit 113.  Do you

4    understand what I'm talking about when I say unit 113?

5        A.  Yes.

6        Q.  And that was a unit in Hawaii; correct?

7        A.  Yes.

8        Q.  Tell me what the original agreement was

9    between you, Mr. Chopra and any other third parties.

10           MR. CAMPAGNA:  Objection.  It's vague and

11   ambiguous.  As opposed to any other agreements?  It's

12   also compound.

13           THE DEPONENT:  Can you rephrase the question?

14           MR. ISON:  Certainly.

15   BY MR. ISON:

16       Q.  It says here that you entered into an

17   agreement with CEC to purchase a condominium, unit 113

18   in Hawaii; is that a true statement?

19       A.  Yes.

20       Q.  Okay.  Was there any other party involved in

21   that agreement to purchase 113?

22       A.  Not when I was involved.

23       Q.  So the original purchase was between Chopra

24   Enterprises Corporation and you?

25       A.  And I don't know that it was Chopra

1    Enterprises or Mr. Chopra himself. Well, yeah.

2       Q. Well, it says here that -- that you and Chopra

3    Enterprises purchased a condominium in Hawaii, unit

4    113. Is it your testimony that you're uncertain

5    whether it was Chopra Enterprises or Deepak Chopra?

6       A. Yeah. I don't recall seeing the deed with the

7    exact owners' names on it.

8       Q. And when this unit 113 was purchased there was

9    no third party on that deed; is that true?

10      A. As far as I remember.

11      Q. At some point Mr. Chopra agreed to transfer

12   interest in 113 -- sorry. Strike that.

13       It says on or about December 13, 2006 you

14   entered into a written agreement for the transfer of

15   the deed to Chopra Enterprises.

16       Do you see that part of section 11(a)?

17      A. Yes.

18      Q. Is that a true statement?

19      A. Yes.

20       MR. CHOPRA: I'm going to turn it off.

21   Sorry.

22   BY MR. ISON:

23      Q. And just to clear this up. The deed was to

24   be to Chopra Enterprises Corporation and not Deepak

25   Chopra?

Case: 10-05196   Doc# 104   Filed: 07/24/12   Entered: 08/10/12 15:26:28   Page 9 of
28

1    A.   I believe so.

2    Q.   And Mr. Chopra agreed to pay you $56,898.35;

3  is that true?

4    A.   Right.

5    Q.   And were you paid any sum of that at the close

6  of the transaction?

7    A.   Yes.

8    Q.   How much were you paid?

9    A.   I think about 35, 36 something like that

10  thousand.

11    Q.   So that left a balance of about $20,000;

12  right?

13    A.   Correct, uh-huh.

14    Q.   Was that remaining balance of about $20,000

15  evidenced by any writing?

16    A.   The -- the deed showed -- I mean not the

17  deed.  The closing statement.

18    Q.   The closing statement showed that you were

19  still owed?

20    A.   And the wire transfer.

21    Q.   Okay.

22    A.   It didn't show the owed.  It showed the amount

23  transferred.

24    Q.   It showed the amount transferred of about

25  $36,000; correct?

1    A.   Correct, uh-huh.

2    Q.   And that still left $20,000 that you were

3  supposed to be paid for that unit?

4    A.   Right.

5    Q.   And that $20,000, was that evidenced by any

6  writing?

7    A.   Yes.  There was a deed that was -- not deed.

8  I don't know what the terminology is.  A document that

9  was submitted which gave a lien on the property.

10   Q.   That would be a deed of trust; is that

11 correct?

12   A.   Yeah.  I believe so, yeah.

13   Q.   Okay.  So in exchange for the deed from Mr. --

14 I'm sorry.  In exchange for the deed from you to Chopra

15 Enterprises you received $36,000 and a lien upon the

16 property for 20,000?

17   A.   Correct, uh-huh.

18   Q.   And were you ever paid that $20,000?

19   A.   No.

20   Q.   Were you ever paid anything on that $20,000?

21   A.   No.

22   Q.   Other than that $20,000, do you have any

23 claims against Mr. Chopra for any events arising out of

24 this particular transaction under unit 113?

25        MR. CAMPAGNA:  Objection.  It calls for a

Case: 10-05196   Doc# 104   Filed: 07/24/12   Entered: 08/10/12 15:26:28   Page 11 of
28
TORREANO SHORTHAND REPORTING (866) 760-DEPO

1    legal conclusion.

2              THE DEPONENT:   Would you rephrase?

3              MR. ISON:   Sure.

4    BY MR. ISON:

5       Q.   Other than the failure of Chopra Enterprises

6    Corporation to pay $20,000 to you under that deed of

7    trust, do you claim any other damages arising out of

8    the transaction between you, Mr. Chopra and/or Chopra

9    Enterprises Corporation regarding unit 113?

10             MR. CAMPAGNA:   Objection.   It also calls for a

11   legal conclusion and the allegations are as stated in

12   the complaint.

13             THE DEPONENT:   It's probably interest due and

14   so on.

15   BY MR. ISON:

16      Q.   Okay.   So your understanding is that you

17   should be paid the $20,000 plus interest due?

18      A.   Correct.

19      Q.   It says here that -- in paragraph 11(a) that

20   Mr. Chopra promised you these things without any

21   intention of performing them.

22             Do you see that?

23      A.   Uh-huh.

24      Q.   Is that a yes?

25      A.   Yes, uh-huh.

Case: 10-05196   Doc# 104   Filed: 07/24/12   Entered: 08/10/12 15:26:28   Page 12 of
28
TORREANO SHORTHAND REPORTING (866) 760-DEPO

1    Q.   On what basis do you claim that Mr. Chopra had

2 no intention of performing his duties under this --

3 or -- strike that.

4        On what basis do you claim that Chopra

5 Enterprises and/or Mr. Chopra had no intention of

6 performing these duties under this agreement regarding

7 unit 113?

8        MR. CAMPAGNA:   Objection.   It also calls for a

9 legal conclusion.   You can answer.

10       THE DEPONENT:   He never recorded the deed.

11 BY MR. ISON:

12    Q.   The deed for unit 113, the $20,000 deed of

13 trust?

14    A.   That's correct.

15    Q.   Okay.   You were the beneficiary of that deed;

16 correct?

17    A.   Yes.

18    Q.   Okay.   Did Mr. Chopra promise to -- or did --

19 strike that.

20       Did either Chopra Enterprises or Mr. Chopra

21 promise to record that deed for you?

22    A.   I believe they represented that it was done

23 already, it was recorded.

24    Q.   When you say "done already" done already at

25 what point?

Case: 10-05196   Doc# 104   Filed: 07/24/12   Entered: 08/10/12 15:26:28   Page 13 of
28
TORREANO SHORTHAND REPORTING (866) 760-DEPO

1     A.   When I -- when the deed was e-mailed to me,

2  that it was recorded already.

3     Q.   And the deed was e-mailed to you after the

4  close of escrow where you received your $36,000?

5     A.   Oh, yes.  Well after.

6     Q.   Okay.  So if I understand the timeline, there

7  was a close of escrow, the escrow called for a $36,000

8  payment to you and a $20,000 deed of trust?

9     A.   That's correct.

10     Q.   And later on you received an e-mail of the

11  $20,000 deed of trust?

12     A.   Yes.

13     Q.   And you understood at that time that that deed

14  of trust had been recorded for your benefit by either

15  Chopra Enterprises or Mr. Chopra?

16     A.   That's correct.

17          MR. CAMPAGNA:  Objection.  It misstates the

18  testimony.  Could you repeat the question?

19          MR. ISON:  I'm sorry.

20          THE COURT REPORTER:  "Question:  And you

21          understood at that time that that deed of

22          trust had been recorded for your benefit by

23          either Chopra Enterprises or Mr. Chopra?"

24          THE DEPONENT:  Yes.

25  //

14

TORREANO SHORTHAND REPORTING (866) 760-DEPO

1    BY MR. ISON:

2        Q.   Do you have any understanding today as to what

3    happened to unit 113?

4        A.   No idea.

5        Q.   When did you first discover that the deed of

6    trust for the $20,000 was not recorded?

7        A.   I think during the bankruptcy of Mr. Chopra.

8        Q.   Was it before or after you filed the

9    adversarial proceeding?

10       A.   Before.

11       Q.   Earlier I asked you what basis you've had for

12   making the claim that Mr. Chopra had no intention of

13   performing his obligations or the obligations of Chopra

14   Enterprises Corporation under your agreement for unit

15   113 and you stated that the deed for the $20,000 was

16   never recorded.

17       A.   That's correct.

18       Q.   Are there any other reasons?

19       A.   No.

20       Q.   Do you claim now that Mr. Chopra or Chopra

21   Enterprises Corporation made any representations that

22   were untrue to you concerning the unit 113?

23       A.   Could you repeat that?

24       Q.   Yes.  You entered into an agreement with

25   either Mr. Chopra or Chopra Enterprises Corporation for

TORREANO SHORTHAND REPORTING (866) 760-DEPO

1    the purchase of unit 113; true?

2        A.    Right.

3        Q.    Did either Chopra Enterprises Corporation or

4    Mr. Chopra make any false statements to you regarding

5    unit 113?

6        A.    Yes.

7        Q.    What false statements did they make to you?

8        A.    The recordation of the deed.

9        Q.    Okay.  Let me reask the question.  I'm talking

10   when you first entered into the agreement with

11   Mr. Chopra or Chopra Enterprises Corporation to

12   purchase, jointly purchase the unit.  Did Mr. Chopra or

13   Chopra Enterprises Corporation make any

14   misrepresentations to you concerning unit 113?

15            MR. CAMPAGNA:  Objection.  It does call for a

16   legal conclusion.

17            THE DEPONENT:  I don't know.

18   BY MR. ISON:

19       Q.    It says in the allegations of paragraph 11(a)

20   that there was a subsequent deed of trust recorded

21   against unit 113.  Do you see that?

22       A.    Which line?

23       Q.    It's paragraph 11(a), lines 1 through 4 on

24   page 4.

25       A.    Oh, yes.  Uh-huh.  I see it.

1     Q.  When did you first learn that this subsequent

2  deed of trust was recorded against unit 113?

3     A.  This is when I did a title search when

4  Mr. Chopra filed for bankruptcy.

5     Q.  So it was after Mr. Chopra filed for

6  bankruptcy; true?

7     A.  Yes.

8     Q.  And I presume it was before you filed this

9  adversarial complaint?

10    A.  Yes.

11    Q.  Okay.  I want you to take a look at paragraph

12  11(b).

13    A.  Yes.

14    Q.  Okay.  You've read that; right?

15    A.  Yes.

16    Q.  Okay.  And this is -- this complaint, this

17  part of the complaint in 11(b) arises out of certain

18  transactions that you had with SearchTech Medical;

19  correct?

20    A.  Yes.

21    Q.  Okay.  Now, you became a factor for SearchTech

22  Medical; is that correct?

23    A.  Yes.

24    Q.  Do you understand what a factor is; right?

25    A.  Yes.

Case: 10-05196   Doc# 104   Filed: 07/24/12   Entered: 08/10/12 15:26:28   Page 17 of 28

1      Q.  And you're certainly factoring the accounts

2  receivable for SearchTech Medical; is that correct?

3      A.  Yes.

4      Q.  Okay.  And certain disputes arose between you

5  and SearchTech Medical; is that a fair statement?

6      MR. CAMPAGNA:  Object as vague and ambiguous,

7  but you can answer.

8      THE DEPONENT:  Can you rephrase?

9  BY MR. ISON:

10     Q.  Yeah.  At some point you became dissatisfied

11 with the payments you were receiving from SearchTech

12 Medical regarding your factoring agreement; right?

13     A.  Yes.

14     Q.  And you believe that Mr. Chopra or SearchTech

15 Medical were not paying you for those accounts

16 receivable as they were being paid to SearchTech

17 Medical; is that correct?

18     A.  Yes.

19     Q.  Okay.  And did you ever file a lawsuit over

20 that?

21     A.  I engaged a lawyer.

22     Q.  You engaged an attorney?

23     A.  Yes.

24     Q.  And who was that attorney that you engaged?

25     A.  It was Larry Israel.

18

1     Q.  Larry Isreal?

2     A.  Yeah.  That's what I believe, yeah.

3     Q.  Okay.  At some point you reached an agreement

4 with Mr. Chopra or SearchTech Medical wherein a

5 promissory note was given to you for $294,831; is that

6 correct?

7     A.  Yes.

8     Q.  And was that the amount that you believed you

9 were owed at that time?

10    A.  Yes.

11    Q.  Do you have any claims that you owed anything

12 more than that, as far as all of these -- the factoring

13 agreement with SearchTech Medical?

14    A.  No.

15    Q.  And you were given a copy of the promissory

16 note?

17    A.  Yes.

18    Q.  You were given an original of the promissory

19 note?

20    A.  I believe so.

21    MR. CAMPAGNA:  Don't guess.

22    THE DEPONENT:  Okay.

23 BY MR. ISON:

24    Q.  Were you ever paid any amount on that

25 promissory note?

1    A.   Yes.

2    Q.   And how much were you paid?

3    A.   I believe about $3,000.

4    Q.   Was it -- let me ask you.  There was a monthly

5  payment due on that promissory note; is that correct?

6    A.   Yes.

7    Q.   Okay.  And was the first monthly payment

8  made?

9    A.   Yes.

10    Q.   Was the second monthly payment made?

11    A.   It was made, but the check bounced.

12    Q.   Okay.  And were there any other payments made

13  to you?

14    A.   No.

15    Q.   On what basis do you claim that Mr. Chopra or

16  SearchTech Medical had no intention of paying you the

17  $294,831?

18        MR. CAMPAGNA:  Objection.  It calls for a

19  legal conclusion.  It's also premature to the extent

20  that this discovery is still open.

21        THE DEPONENT:  I think the question is very

22  vague.

23  BY MR. ISON:

24    Q.   Okay.  You say in this complaint, this

25  adversarial complaint, that SearchTech Medical and

Case: 10-05196   Doc# 104   Filed: 07/24/12   Entered: 08/10/12 15:26:28   Page 20 of
28

1  Deepak Chopra promised they would pay you $294,831;

2  correct?

3      A.  Yes.

4      Q.  And you say that they never had any intention

5  of paying you that money, although they promised to do

6  it.  Do you see that?

7      A.  Yes.

8      Q.  On what basis do you claim that they had no

9  intention of paying you?

10          MR. CAMPAGNA:  Objection.  It's vague as to

11  time.  Are you asking him at the time that he drafted

12  the complaint or the time that this adversarial

13  proceeding complaint was prepared?  On what basis are

14  you asking about what information he has now subsequent

15  to the filing of the lawsuit?

16  BY MR. ISON:

17      Q.  What information do you have now that serves

18  as a basis of your complaint that SearchTech Medical

19  and Deepak Chopra had no intention of paying you the

20  $294,831?

21          MR. CAMPAGNA:  I will object that it does call

22  for a legal conclusion.  It may get into areas of

23  attorney-client privilege at this time.

24          But you can answer.  You can also --

25          THE DEPONENT:  Pardon?

Case: 10-05196   Doc# 104   Filed: 07/24/12   Entered: 08/10/12 15:26:28   Page 21 of
28
TORREANO SHORTHAND REPORTING (866) 760-DEPO

1    MR. CAMPAGNA:  Do you understand what he's

2  asking?

3    THE DEPONENT:  Yeah.  But there's a lot of

4  things in there.

5    MR. CAMPAGNA:  Can we go off the record for a

6  moment?

7    MR. ISON:  Sure.  You can talk to your client

8  at any time.

9    (Recess taken.)

10   MR. ISON:  Okay.  Let's reask the question or

11  ask another question.  Let's just go on from where we

12  were because I don't remember where we were.

13  BY MR. ISON:

14   Q.  Okay.  You entered into a promissory note and

15  it's been marked already as Exhibit 5.  Is that the

16  promissory note you're referring to when you're

17  referring to the $294,831?

18   A.  Yes.

19   Q.  And Mr. Chopra or SearchTech Medical paid you

20  one payment, bounced the check the second time and you

21  never saw any of the other money after that; true?

22   A.  Yes.

23   Q.  Okay.  And in your complaint at 11(b) you

24  claim that Mr. Chopra and SearchTech Medical entered

25  into this promissory note without ever having any

Case: 10-05196   Doc# 104   Filed: 07/24/12   Entered: 08/10/12 15:26:28   Page 22 of 28

1    intention of paying you then; is that correct?

2        A.   Yes.

3        Q.   And the basis for that claim that they never

4    had any intention of paying you was what?

5            MR. CAMPAGNA:  Objection.  It does call for a

6    legal conclusion.

7            THE DEPONENT:  There were promises not kept,

8    payment was late.  I had to ask numerous times to make

9    the payment and so on.

10   BY MR. ISON:

11       Q.   Okay.  So after they entered into the

12   promissory note you had received one payment, a bounced

13   check the second time, and that is the basis upon which

14   you're claiming that they had no intention of paying

15   you; is that correct?

16           MR. CAMPAGNA:  Objection.  It misstates the

17   witness's testimony.

18           THE DEPONENT:  As well as other -- other

19   issues with Mr. Chopra at that time.

20   BY MR. ISON:

21       Q.   Okay.  And what other issues are you talking

22   about now?

23       A.   It's promises to pay for let's say the

24   negative of the property we owned which were not paid

25   and so on.

1    Q.  So there were other promises that Mr. Chopra

2 made regarding some properties that you had an interest

3 in?

4    A.  Right.

5    Q.  Okay.  And which properties are those?

6    A.  Oh.  It's a couple in Hawaii.

7    Q.  Two in Hawaii?

8    A.  No.  A number of them.  There were three.

9    Q.  So there are three properties in Hawaii?

10    A.  Right, uh-huh.

11    Q.  Any others?

12    A.  No.

13    Q.  So as part of your basis for saying that

14 Mr. Chopra or SearchTech Medical had no intention of

15 paying you the $294,831 is failure of Mr. Chopra to

16 fulfill promises regarding three properties in Hawaii?

17        MR. CAMPAGNA:  I'm going to object that it

18 misstates the witness's testimony.

19        THE DEPONENT:  That's part of the issues,

20 yeah.

21 BY MR. ISON:

22    Q.  Okay.  Anything else?

23    A.  The late payment, numerous calls and e-mails

24 to Mr. Chopra to make the payment.

25    Q.  To make the payment on the $294,831?

1    A.  Yes.

2    Q.  So after Mr. Chopra and SearchTech Medical

3  entered into this promissory note you wrote several

4  e-mails or letters to him and he responded in some

5  manner and they -- the e-mails concern "where's my

6  money"?

7    A.  Right.

8    Q.  Do you know who Sylvester Flowers,

9  F-L-O-W-E-R-S, is?

10    A.  I've heard the name, uh-huh.

11    Q.  Where did you hear that name?

12    A.  Something to do with some lawsuit against

13  SearchTech Medical.

14    Q.  Do you know anything else about that lawsuit?

15    MR. CAMPAGNA:  Objection.  It calls for a

16  narrative.

17    THE DEPONENT:  Can you be specific?

18  BY MR. ISON:

19    Q.  I just asked you if you knew anything else

20  about it.  You can say yes or no to that and then we

21  can explore what you do know.

22    A.  There was a lawsuit, yeah, I believe.

23    Q.  There was a lawsuit?

24    A.  Right.

25    Q.  And was the lawsuit against whom?

TORREANO SHORTHAND REPORTING (866) 760-DEPO

1      A.   Against SearchTech Medical and possibly

2  Mr. Chopra.

3      Q.   Okay.  And you know what that lawsuit arose

4  out of?

5      A.   Some money borrowed by Mr. Chopra or

6  SearchTech.

7      Q.   Do you know what a prejudgment writ of

8  attachment is?

9      A.   Yes.

10      Q.   Was there a prejudgment writ of attachment

11  issued in that case?

12          MR. CAMPAGNA:  I'm going to object on the

13  grounds of relevance, that it's not reasonably

14  calculated to lead to the admission -- lead to the

15  discovery of admissible evidence.

16          Can you repeat the question?

17  BY MR. ISON:

18      Q.   Do you know whether or not there was a

19  prejudgment writ of attachment issued in the Flowers

20  case against SearchTech Medical?

21          MR. CAMPAGNA:  I'm going to object.  It's

22  vague as to time.

23          THE DEPONENT:  I don't know about the Flowers

24  case per se, but I was told there was a writ attached.

25  //

1   BY MR. ISON:

2       Q.   And do you know what that writ attached to?

3       A.   No.  What do you mean?

4       Q.   Well, your second check bounced, the second

5   check that was paid to you by SearchTech Medical on

6   this promissory note; correct?

7       A.   Right.  Which was late, also.

8       Q.   It was not only late, but it bounced?

9       A.   In addition, yeah.

10      Q.   Yes.  And do you have any understanding why

11  that check bounced?

12      A.   I was told there was a writ or something that

13  caused it to bounce.

14      Q.   And was that writ a writ that arose out of the

15  Flowers case against SearchTech Medical and possibly

16  Mr. Chopra?

17          MR. CAMPAGNA:  Objection.  Lacks personal

18  knowledge.

19          THE DEPONENT:  I wasn't aware of that, no.

20  BY MR. ISON:

21      Q.   You don't know one way or the other?

22      A.   Could you restate the question?

23      Q.   Yeah.  Your second check that was late

24  bounced?

25      A.   Right.

TORREANO SHORTHAND REPORTING (866) 760-DEPO

1    Q.   And you were told that it would bounce because
2  of a writ of some sort?

3    A.   That was what I was told, uh-huh.

4    Q.   And who told you that?

5    A.   Somebody at SearchTech.

6    Q.   Was it Mr. Chopra?

7    A.   Either Mr. Chopra or Ms. Soria.

8    Q.   And my question is it was a writ.  Do you know
9  whether the writ arose out of the case of *Flowers*
10 *versus SearchTech Medical* and possibly Mr. Chopra?

11   A.   No, I didn't know that.

12   Q.   One way or the other?

13   A.   Uh-huh.

14   Q.   True?

15   A.   I still don't see your conclusion of one way
16 or the other.

17   Q.   I see.  You don't understand what I mean.

18        It's possible that you believed that the writ
19 was for some other case.  It's possible you don't have
20 any idea what case the writ was for and I'm trying to
21 find out which answer you're giving me here.

22        That wasn't a well-phrased question, was it?

23   A.   No.  Give me the two choices.

24   Q.   One in column A and one in column B.

25        All right.  You have an understanding or