1        A.   In accounting when you send a check for a

2   filing fee, you said 960, you send one check.  To the

3   best of my knowledge, this was sent to STM.  If your

4   question is that the other two line items are Chopra

5   and Deepak, there's most likely an entry somewhere in

6   Quickbooks that was reimbursed to -- for those two

7   items that SearchTech Medical paid because the one

8   check was issued for SearchTech Medical.

9        The case was against SearchTech Medical, the

10  big case.  The whole case was against SearchTech

11  Medical.  Chopra was part of the case.  So --

12       Q.   Chopra Enterprises Corporation was part of the

13  case?

14       A.   It looks like here.  This is a filing fee for

15  Chopra Enterprises and Deepak Chopra.

16       Q.   Who was also part of the case?

17       A.   Yes.

18       Q.   You're saying that the main case was --

19       A.   SearchTech Medical.

20       Q.   -- SearchTech Medical, Inc.?

21       A.   Yes.

22       Q.   Do you have any knowledge that Chopra

23  Enterprises Corporation paid SearchTech Medical, Inc.

24  back for the $320 filing fee?

25       A.   I don't have knowledge, but it's possible.

Case: 10-05196   Doc #: 2   Filed: 07/12/12   Entered: 08/10/12 15:42:15   Page 1 of 39

1    Q.   That's my question.  Do you have any knowledge

2  of it?

3    A.   I don't have any knowledge.

4    Q.   Do you have any knowledge that you personally

5  paid back the $320 filing fee to SearchTech Medical?

6    A.   I don't have knowledge of that.

7    Q.   Do you know whether you paid it back?

8    A.   Accounting --

9    Q.   Let me -- let me ask a different question.

10         Did you pay $320 back to SearchTech Medical

11  for the filing fees that SearchTech Medical paid on

12  your behalf?

13    A.   Can I answer the question?

14         MR. CAMPAGNA:  It's a yes or no question.  He

15  can repeat the question.  You can answer yes or no.

16         Can you repeat the question.

17         MR. ISON:  Let's take a break.

18         MR. CAMPAGNA:  Okay.  Can we -- Neil, just a

19  moment.  Can we just let the record reflect that you

20  two are taking a break.  You're going outside to

21  discuss --

22         MR. ISON:  You can put anything you want on

23  the record, but it doesn't come in.  It's colloquy of

24  counsel.

25         MR. CAMPAGNA:  I'm just letting the record

509

1  reflect that you're leaving with your client after I

2  asked him a question before he's answered it.

3         MR. ISON:  Right.  Perfectly proper, but go

4  ahead.

5         MR. CAMPAGNA:  We're off the record.

6         (Recess taken.)

7         MR. CAMPAGNA:  We're back on the record.

8  BY MR. CAMPAGNA:

9     Q.  Do you need the question repeated?

10    A.  No.

11        I don't know.  The answer is I don't know.

12    Q.  You don't know whether you paid the $320 back

13  to SearchTech Medical; correct?

14    A.  Yes.

15    Q.  If you had paid it back, would you have

16  written a check?

17    A.  Yes.

18        MR. CAMPAGNA:  The next exhibit is Exhibit

19  90.

20        (EXHIBIT 90 WAS MARKED FOR IDENTIFICATION.)

21  BY MR. CAMPAGNA:

22    Q.  Do you recognize this document?

23    A.  No.

24    Q.  It's a document dated 3/15/2007.  It appears

25  to be a check to Ison Law Offices for $960 for the

510

1    Flowers case.

2             Do you see that there, the top third?

3        A.   Yes.

4        Q.   And it would be one of the accountants who

5    would know exactly what this is about; is that right?

6        A.   Yes.

7        Q.   Mahbub or Mary Jane or Chris?

8        A.   Yes.

9        Q.   In 2007?

10       A.   Yes.   Chris is spelled C-H-R-I-S.

11       Q.   Is that a female?

12       A.   Male.

13            MR. CAMPAGNA:   Next exhibit is Exhibit 91.

14            (EXHIBIT 91 WAS MARKED FOR IDENTIFICATION.)

15   BY MR. CAMPAGNA:

16       Q.   This appears to be a copy of a check in the

17   amount of $1,940.20 written on August 28, 2008 to

18   Angelina Soria.   Excuse me.   If you look down to the

19   middle of the page, it shows "650 . G -- capital G &

20   A: 6880 . travel & ENT, travel, flight to LA," and then

21   there's also below that flight and insurance from LA to

22   Egypt.

23            Are you familiar with this flight travel?

24       A.   No.

25       Q.   I don't expect that you recognize this

Case: 10-05196   Doc# 208-2   Filed: 07/23/12   Entered: 08/16/12 15:42:19   Page 4
of 39
TORREANO SHORTHAND REPORTING (866) 760-DEPO

1    particular document.

2         A.   No.

3         Q.   It's fair to say that you don't; correct?

4         A.   No.

5         Q.   And this -- this came from SearchTech

6    Medical.  Again, it would be the accountants who would

7    know what this is about?

8         A.   Yes.

9         Q.   Well, it appears that there's money paid to

10   Angelina Soria, $1,940.20, and apparently part of that

11   money included flight to LA, flight insurance from LA

12   to Egypt, as well as for stamps and ink.  I'm focusing

13   on the flight to Egypt.

14             Is there any reason why Angelina Soria would

15   need to fly to Egypt as part of her work as CEO for

16   SearchTech Medical?

17        A.   No.  No.

18             MR. CAMPAGNA:  I actually forgot the question

19   that I asked you.  Could you repeat my question back to

20   me.

21             THE COURT REPORTER:  "Question:  Is there any

22             reason why Angelina Soria would need to fly to

23             Egypt as part of her work as CEO for

24             SearchTech Medical?

25             "Answer:  No.  No."

Case: 10-05196   Doc# 206-2   Filed: 07/23/12   Entered: 08/10/12 15:42:15   Page 5 of 39

TORREANO SHORTHAND REPORTING (866) 760-DEPO

1    BY MR. CAMPAGNA:

2        Q.   And you were not aware that Angelina Soria got

3    reimbursed for flight travel to Egypt by SearchTech

4    Medical?

5        A.   She reimbursed it back to SearchTech Medical.

6        Q.   Pardon?

7        A.   She reimbursed it back to SearchTech Medical.

8        Q.   How do you know that?

9        A.   Because this is going through bankruptcy.  The

10   Trustee was aware of that.  She charged the American

11   Express card, I think, for SearchTech Medical, and she

12   reimbursed SearchTech Medical.

13       Q.   Did the trustee force Angelina Soria to

14   reimburse it back?

15       A.   No, nobody forced.  It was just a transaction

16   from a credit card that she reimbursed back to

17   SearchTech Medical.  She charged a company card.

18       Q.   Oh, she had done that prior to the

19   bankruptcy?

20       A.   I don't know when the bankruptcy was filed for

21   SearchTech Medical.

22            THE DEPONENT:  Do you know when it was filed?

23            MR. ISON:  I'm sorry?

24            THE DEPONENT:  Bankruptcy for SearchTech

25   Medical, do you remember when that was filed?

Case: 10-05196   Doc#: 106-2   Filed: 07/23/12   Entered: 08/10/12 15:42:19   Page 6 of 39

TORREANO SHORTHAND REPORTING  (866)  769-DEPO

1              MR. ISON: I don't know.

2 BY MR. CAMPAGNA:

3     Q. What I'm wondering about is because this is a

4 check to Angelina Soria that SearchTech wrote to

5 reimburse her for flight and insurance from LA to Egypt

6 and also a flight to LA.

7     A. It was -- it was -- if you look at the

8 Quickbooks, I don't know the detail, but it was

9 reimbursed and it was clean.

10     Q. Okay. So at some point after Angelina had

11 gotten SearchTech Medical to reimburse her for the

12 travel expenses, SearchTech Medical got Angelina Soria

13 to reimburse it?

14     A. Yes.

15           MR. CAMPAGNA: The next exhibit is Exhibit

16 92.

17           (EXHIBIT 92 WAS MARKED FOR IDENTIFICATION.)

18 BY MR. CAMPAGNA:

19     Q. This is a check from SearchTech Medical to

20 Chopra Enterprises, 5/11/2006, check number 15724.

21        Do you recognize this check?

22     A. No.

23     Q. "Chopra Enterprises" would be Chopra

24 Enterprises Corporation; correct?

25     A. Yes.

Case: 10-05196   Doc# 106-2  Filed: 07/23/12  Entered: 08/10/12 15:42:15  Page 7 of 39

1    Q.   And that's its proper address there, 100 West

2    Rincon, Suite 206, it looks like?

3    A.   Yes.

4    Q.   Who signed this check?

5    A.   It looks like Juan Carmona.

6    Q.   When you say it looks like Juan Carmona, is

7    that -- are you referring to the signature that appears

8    a couple lines above "authorized signature"?

9    A.   Well, this is SearchTech Medical.  This is --

10   this signature would be Gary Wimp or -- I don't know

11   whose signature this is.  The accountant's, Praveen's.

12   Q.   You don't recognize the signature?

13   A.   Not at all.

14   Q.   It's not your signature?

15   A.   No.

16   Q.   So 5/11/2006 it would be Angelina Soria as

17   CEO; right?

18   A.   I don't know when Gary left.  2005?

19   Q.   I think you had said 2005 previously.

20   A.   Yeah.  So it could be Angelina.  It could be

21   Pamela.

22   Q.   And if you look back to Exhibit 44, on the

23   same date of the check there's a general journal entry

24   here for SearchTech Medical's Quickbooks for Chopra

25   Enterprises Corporation.  5/11/2006, Chopra Enterprises

Case: 10-05196   Doc#208-2   Filed: 07/23/12   Entered: 08/10/12 15:42:15   Page 8 of 39

1    short-term loan.  Chopra Enterprises administrative,

2    1,000, Bank of America I, minus $4,000.

3         Probably that's the corresponding line item to

4    this check?

5       A.  Again, it's too small.  Is it returned?  Is it

6    minus?

7       Q.  It's minus.

8       A.  Yeah.  So I don't know about --

9       Q.  Okay.  We'll back up.  If we look at where it

10   says "check" in the left-hand side, check 5/11/2006,

11   check number 15724.

12        Do you see this check 15724 over here?

13      A.  Uh-huh.  Right here.

14      Q.  Minus $4,000?

15      A.  Uh-huh.

16      Q.  To the best of your knowledge, that check

17   would correspond to this particular journal entry;

18   right?

19      A.  It could be.

20        MR. CAMPAGNA:  I'll mark next in order

21   Exhibit 93.

22        (EXHIBIT 93 WAS MARKED FOR IDENTIFICATION.)

23   BY MR. CAMPAGNA:

24      Q.  Do you recognize this document?

25      A.  No.

1      Q.  Do you recognize the signature?

2      A.  No.

3          MR. CAMPAGNA:  Mark the next in order

4   Exhibit 94.

5          (EXHIBIT 94 WAS MARKED FOR IDENTIFICATION.)

6   BY MR. CAMPAGNA:

7      Q.  Do you recognize this document?

8      A.  No.

9      Q.  Do you recognize the signature?

10     A.  No.

11         MR. CAMPAGNA:  We'll mark the next exhibit

12  Exhibit 95.

13         (EXHIBIT 95 WAS MARKED FOR IDENTIFICATION.)

14  BY MR. CAMPAGNA:

15     Q.  Do you recognize this document?

16     A.  No.

17     Q.  It's a check dated 8/25/2009 from SearchTech

18  Medical to Deepak Chopra for a thousand dollars.  The

19  memo says loan to Deepak Chopra.

20         Do you know what that memo is stating?

21     A.  Loan to Deepak Chopra signed by Alam.

22     Q.  That's Afzal?

23     A.  No.

24     Q.  No.  Mahbub Alam?

25     A.  Mahbub Alam.

517

Case: 10-05196   Doc# 186-2   Filed: 07/31/12   Entered: 08/10/12 15:42:19   Page 10 of 39

1     Q.   Is this SearchTech Medical giving a loan to

2   you, Deepak Chopra?

3     A.   I have no idea.   Returning my loan and giving

4   me the loan.

5     Q.   It could be either/or?

6     A.   Yeah.

7         MR. CAMPAGNA:   Mark the next exhibit in order

8   Exhibit 96.

9         (EXHIBIT 96 WAS MARKED FOR IDENTIFICATION.)

10  BY MR. CAMPAGNA:

11    Q.   96 is a series of three checks, check numbers

12  4891, 4892, 4913 from SearchTech Medical to Deepak

13  Chopra.

14        Do you recognize these checks?

15    A.   No.

16    Q.   In August of 2009 do you know whether you were

17  lending money to SearchTech Medical?

18    A.   I was.

19    Q.   Do you know whether in August of 2009 you were

20  also getting repaid by SearchTech Medical --

21    A.   I have no --

22    Q.   -- for money you had loaned to SearchTech

23  Medical?

24    A.   It's a bridge loan.   It might be they are

25  paying it back right away.

1      Q.   The signatures on those checks, that's Mahbub

2   Alam?

3      A.   Yes.

4           MR. CAMPAGNA:   The next exhibit is Exhibit

5   97.

6           (EXHIBIT 97 WAS MARKED FOR IDENTIFICATION.)

7   BY MR. CAMPAGNA:

8      Q.   Do you recognize this document?

9      A.   No.

10     Q.   Are you familiar with ESC Properties,

11  LLC/Hillcrest Motel, as it states on the top left

12  corner of this check?

13     A.   Yes.

14     Q.   What is ESC Properties, LLC/Hillcrest Motel?

15     A.   It owned a hotel in Kansas.

16     Q.   Who owns ESC Properties, LLC?

17     A.   Nobody now.

18     Q.   In September of 2009, which is the date of the

19  check, who owned ESC Properties, LLC?

20     A.   I did.

21     Q.   Is this your handwriting on the check?

22     A.   No.

23     Q.   Anywhere on the check?

24     A.   No.

25     Q.   September 22nd, 2009 it appears through check

519

TORRANCE SHORTHAND REPORTING (866) 562-DEPO

1  number 1179 from Hillsboro State Bank in Hillsboro,

2  Kansas, there was a check paid from ESC Properties,

3  LLC/Hillcrest Motel to SearchTech Medical, Inc. for

4  $5,001 or maybe -- is that what that is?

5      A.  $500.

6      Q.  For $500?

7      A.  Yes.

8      Q.  Are you familiar with that transaction?

9      A.  No.

10     Q.  Who would be familiar with that transaction?

11     A.  Mahbub Alam.

12     Q.  Is that Mahbub Alam's handwriting in the lower

13  right-hand corner of the check?

14     A.  I don't know.

15     Q.  You didn't sign this check?

16     A.  No.

17     Q.  So where it says "Deepak Chopra" on the

18  signature line, that's not your signature?

19     A.  It doesn't look like my signature.

20     Q.  Who had signatory authority on this account

21  for ESC Properties, LLC in September of 2009?

22     A.  Kasey Taylor.  Or was she gone in 2009?  I

23  don't recollect.  I don't recollect.

24     Q.  Did you have signatory authority?

25     A.  Yes.

Case: 10-05196   Doc #1982-1  Filed: 07/20/12   Entered: 08/10/12 15:42:19   Page 13 of 39

TORREANO SHORTHAND REPORTING (866) 760-DEPO

1      Q.  Did Mahbub Alam have signatory authority?

2      A.  I don't recollect.  I don't think then.

3      Q.  Did you say that it was Mahbub Alam's

4  handwriting on the check?

5      A.  I don't know that.

6      Q.  Everywhere else?  I really don't remember what

7  you said.

8      A.  I don't know whose handwriting it is.

9          MR. CAMPAGNA:  Okay.  The next exhibit is

10  Exhibit 98.

11          (EXHIBIT 98 WAS MARKED FOR IDENTIFICATION.)

12  BY MR. CAMPAGNA:

13      Q.  So this is a check from SearchTech Medical,

14  Inc. to Chopra Enterprises on September 28th, 2009 for

15  $200.

16          Do you see that there?

17      A.  Yes.

18      Q.  Is that Mahbub Alam's signature in the lower

19  right-hand corner?

20      A.  Yes.

21      Q.  It says loan returned to ESC.  Would that be

22  referring to ESC Properties, LLC?

23      A.  Yes.

24      Q.  Do you have any idea what this was about?

25      A.  No.

Case: 10-05196   Doc ### Filed 08/18/12   Entered 08/18/12 13:42:13   Page 14 of 39
TORRANO SHORTHAND REPORTING (866) 1560-DEPO

1      Q.   Mahbub Alam would be the one to ask?

2      A.   Yes.

3      Q.   Anybody else?

4      A.   Well, I think Mahbub Alam you could ask.

5      Q.   What about Kasey Taylor?

6      A.   No, I don't think she was there in 2009.

7      Q.   So a check, SearchTech Medical, Inc. to Chopra

8   Enterprises returning a loan to ESC?

9      A.   Yes.

10         MR. CAMPAGNA:  The next exhibit Exhibit 99.

11   It's a three-page document.

12         (EXHIBIT 99 WAS MARKED FOR IDENTIFICATION.)

13   BY MR. CAMPAGNA:

14     Q.   Do you recognize this document?

15     A.   No.

16     Q.   It appears to be a check from Stanford

17   Hospital to SearchTech Medical dated 8/25/2009 in the

18   amount of $7,000.

19         You don't recognize that?

20     A.   It's a payment.  I don't recognize this

21   document.  It's a payment to SearchTech Medical from

22   Stanford Hospital.

23     Q.   The second page of this is also a check on

24   8/25/2009.  This one is from Lucile Packard Children's

25   Hospital.

1      That's the one that's associated with Stanford

2  Hospital; right?

3      A.   Yes.

4      Q.   And then it's for $3,000?

5      A.   Yes.

6      Q.   So there's a total deposit here.  If you look

7  on the third page of the document, there is -- on

8  8/26/2009 there is a deposit to SearchTech Medical for

9  $10,000.

10      A.   Yes.

11      Q.   Are you familiar with this $10,000 deposit

12  total from Stanford and Lucile Packard to SearchTech

13  Medical in August of 2009?

14      A.   No.

15      Q.   That would be Mahbub Alam at that time?

16      A.   Yes.

17      Q.   So he'd be the one to ask?

18      A.   Yes.

19      Q.   Anybody else?

20      A.   No.

21      MR. CAMPAGNA:  Next exhibit is a bank

22  statement from California Bank & Trust.  It's a

23  three-page document.  Statement date August 31, 2009 to

24  July 31st, 2009.

25      (EXHIBIT 100 WAS MARKED FOR IDENTIFICATION.)

523

1    BY MR. CAMPAGNA:

2         Q.   Do you recognize this document?

3         A.   No.

4         Q.   It shows in the deposit credit section on 8/26

5    a $10,000 deposit.

6         A.   Yes.

7         Q.   Do you see that there?

8         A.   Yes.

9         Q.   You're not familiar with the transaction?

10        A.   No.

11        Q.   And so Mahbub Alam, again, he'd be the one to

12   ask about this?

13        A.   Yes.

14        Q.   Anybody else at SearchTech who you think would

15   have knowledge of this besides Mahbub Alam?

16        A.   No.

17        Q.   For the California Bank & Trust account, who

18   had signatory authority on checks?

19        A.   Angelina.

20        Q.   Angelina Soria?

21        A.   Soria.  I don't remember if I had signature --

22   I never signed the checks when she was running the

23   company.

24        Q.   You may have had signatory authority at the

25   time, but you didn't recall writing any checks or

                                                        524

1  signing any checks rather?

2      A.  Not until the very end.  Maybe 2009 I may

3  have.  I'm not sure.

4      Q.  You're saying at the end of SearchTech Medical

5  you did sign checks?

6      A.  I don't remember if I did or not, but could

7  have.

8      Q.  Was Angelina Soria there with you at the end?

9      A.  At the end she was not there when the company

10  was going under.  She may be working as a consultant.

11  I don't remember that.

12      Q.  For about how long were you without Angelina

13  Soria towards the end of SearchTech Medical?

14      A.  Three months, maybe in there.

15          MR. CAMPAGNA:  Next in order is Exhibit 101.

16  101 is also a bank statement from California Bank &

17  Trust.  Statement period November 30th, 2009 to

18  October 30th, 2009.

19          (EXHIBIT 101 WAS MARKED FOR IDENTIFICATION.)

20  BY MR. CAMPAGNA:

21      Q.  Do you recognize this document?

22      A.  No.

23      Q.  So the time period is November 30th, 2009 to

24  October 30th, 2009.  Was Angelina Soria with the

25  company at that time?

Case: 10-05196   Doc TORREANO SHORTHAND REPORTING (866) 360-DEPO Page 18
of 39

1    A.   She may be working as a consultant.

2    Q.   When did SearchTech Medical end?

3    A.   2009, end of 2009.

4    Q.   December 31st, 2009?

5    A.   Yes.

6    Q.   So this is -- this November 30th, 2009

7    statement date is within that three-month period where

8    you were -- you were on your own without Angelina

9    Soria; is that correct?

10   A.   I think she was a part consultant.  I'm not on

11   my own.  I think she was part of it at the end.  When I

12   say it ended 2009, I mean we didn't have any

13   contractors after that.  The company was still existing

14   paying the bills and trying to close down.

15   Q.   When was the three-month period when you were

16   without Angelina Soria as you testified earlier?

17   A.   Maybe -- I remember at the end she was not

18   with me.  She was just a consultant.  She was always

19   there, but she was not actually involved with the

20   company except going through the numbers, payments we

21   have to make.  Because we shut down everything in

22   2009.  We were not hiring any consultants.  We had to

23   close it down.

24   Q.   Are you saying there was never a three-month

25   period when you were without Angelina Soria?

526

1    A.   There was never a period when I was without

2  her, but she was not actively involved.  She was

3  helping us out if we needed anything.  If we needed any

4  questions answered, she was there.

5    Q.   Was she there to write checks?

6    A.   There's not -- I don't recollect.  I don't

7  think so.  I'm not sure.

8    Q.   In the last three months of SearchTech

9  Medical, which would be the last quarter of 2009, who

10  was available to write checks for SearchTech Medical?

11    A.   Mahbub Alam was writing checks.

12    Q.   Exclusively?

13    A.   Yes.  And I was also on the checking account,

14  I think, but I don't think I wrote any checks, but last

15  three months means is that the contractors of the

16  company was still functioning.  The company was still

17  functioning, but we filed the tax return in 2009.

18    Q.   If you turn to the third page of Exhibit 101,

19  in the middle of the page it says 32 checks processed.

20  There's checks numbers 5004, 5005, 5006 for 2,000,

21  2,000 and $1,000 respectively.

22    Do you see that?

23    A.   Yes.

24    Q.   You've already said that you don't recall

25  writing any checks and this really would be Mahbub Alam

1　to ask; is that right?

2　　　A.　I -- I think I had authority to write the

3　checks, but I don't know if I wrote any checks.　I'm

4　not sure about it.　Because we had an account with

5　another bank on SearchTech Medical.　I think we had

6　another bank open for SearchTech Medical and I don't

7　recollect what happened because California Bank froze

8　our account because we were so many negatives.　But

9　there was another bank account that was opened.　I

10　think there was.　I'm not sure.

11　　　　　MR. CAMPAGNA:　The next exhibit is

12　Exhibit 102.　These are the Quickbooks for SearchTech

13　Medical, Inc. for California Bank & Trust.

14　　　　　(EXHIBIT 102 WAS MARKED FOR IDENTIFICATION.)

15　BY MR. CAMPAGNA:

16　　　Q.　Do you recognize this document?

17　　　A.　No.

18　　　　　MR. ISON:　This is 102?

19　　　　　MR. CAMPAGNA:　Yes.

20　BY MR. CAMPAGNA:

21　　　Q.　Do you recognize this document?

22　　　A.　No.

23　　　Q.　Okay.　Turning to the second page of the

24　exhibit, on 8/26/2009 there's a deposit.　It says

25　"Deepak Chopra, $10,000."

1          Are you familiar with that transaction?

2     A.   No.

3     Q.   Okay.  If you look back at Exhibit 99, this

4 might refresh your memory here.  Looking back at

5 Exhibit 99, that's what's in your hand.  The third page

6 is the deposit slip dated 8/26/09.

7          Cross-referencing the documents, do you have

8 any idea of what that transaction was?

9     A.   Money came from the customer.

10     Q.   So it's fair to say that it was the money from

11 Stanford and Lucile Packard on 8/26/2009; correct?

12     A.   It shouldn't have been booked that way.

13     Q.   Pardon?

14     A.   How was this booked?  I don't know.  I don't

15 know how this was booked.  But it's showing how it was

16 booked.  It should have been booked against Stanford;

17 right?  It's the same check.  It's the same check.  I

18 know what the check is.  I don't know the answer for

19 that.  But it says 8/26/2009 and here is 8/25/2009.

20     Q.   What's the 8/25/2009?

21     A.   Exhibit 99.

22     Q.   Correct.  Well, I was looking at the third

23 page of Exhibit 99 is a deposit slip dated 8/26/2009.

24 It's the third page of the exhibit.

25     A.   Okay.

1     Q.  Which corresponds to the date in the

2  Quickbooks for California Bank & Trust.

3     A.  Okay.

4     Q.  So it's fair to say that this is the $10,000

5  from Stanford?

6     A.  I don't know.  I'm sure it is if this

7  corresponds to that.

8            MR. CAMPAGNA:  The next exhibit is Exhibit

9  103.

10           (EXHIBIT 103 WAS MARKED FOR IDENTIFICATION.)

11  BY MR. CAMPAGNA:

12    Q.  This is a deposit summary from the SearchTech

13  Medical Quickbooks, California Bank & Trust.

14    A.  Yes.

15    Q.  On 8/26/2009 where it says "Stanford Hospital

16  and Clinics, $10,000."

17    A.  Yes.

18    Q.  Does that alleviate your concern about the

19  nature of that transaction on the other Exhibit 102

20  that this, in fact, was the Stanford Hospital and

21  Clinics deposit?

22    A.  Yes.

23    Q.  We don't know why it says "Deepak Chopra"

24  under the "split" section; right?

25    A.  Yeah.  That's just a memo.

1    Q.   And I think that may have given you some

2   concern when you saw it earlier; is that right?

3    A.   No, it didn't because it could have been I

4   deposited the check.  So they put my name in there.

5    Q.   And it makes sense that you may have been the

6   one depositing the check because SearchTech was winding

7   down in that period and you didn't have other people to

8   do those things; is that right?

9    A.   It could be.

10    MR. CAMPAGNA:  Next exhibit, Exhibit 104.

11    (EXHIBIT 104 WAS MARKED FOR IDENTIFICATION.)

12   BY MR. CAMPAGNA:

13    Q.   It's a SearchTech Medical, Inc. Quickbooks

14   find report for September 26th, 2003 through December

15   31st, 2010.

16    Do you recognize this document?

17    A.   No.

18    Q.   It appears to be a document in reverse

19   chronological order meaning that the first entry is

20   10/2/2009 loan to Deepak, office supplies, minus

21   $5,000.

22    Do you see that there?

23    A.   It's $500.

24    Q.   I do mean $500.  And I just wanted to make

25   sure that you were paying attention with me here,

531

1    Mr. Chopra.

2         A.   Okay.

3         Q.   And then at the bottom of the page it says

4    September 29, 2003, minus $1,812.50.  I'll give you a

5    moment to look at that transaction sheet and you can

6    look up when you're done.

7              What are these transactions about here?

8         A.   I have no idea.

9         Q.   There's a total here minus $141,178.84.  There

10   are some checks here August 2009.  The third line down

11   says loan to Deepak, $1,000.  That's on 8/28/2009.

12   8/26/2009 loan to Deepak, minus $2,500.

13             Do you see those there?

14        A.   Yeah.  Account is payroll account.  Do you see

15   the payroll account?

16        Q.   Coming from the payroll account.

17        A.   Yes.

18        Q.   What's the significance of that?

19        A.   It could be the salary I was taking.

20        Q.   Were you taking a salary in August of 2009

21   when SearchTech Medical, Inc. was winding down?

22        A.   Yes.

23        Q.   Also on August 26, 2009, loan to Deepak,

24   $1,000.

25             Do you see that there?

Case: 10-05196   Doc#TORRBAN\fjlSdRTBANSe RE#ORUM§3 (1866) 157B9 1DEPdge 25
of 39

1       A.   Yes.  It says payroll account.

2       Q.   Yes.

3       A.   Payroll?

4       Q.   Payroll.  Is payroll -- is money from the

5   payroll account only used to pay payroll?

6       A.   Yes.

7       Q.   Exclusively?

8       A.   Yes.

9       Q.   It wouldn't go to pay consulting fees?

10      A.   Consulting would be 1099, I think.

11      Q.   So would it go to pay office supplies?

12      A.   I don't think so.  I don't know.  You'd have

13  to ask the accountant.

14      Q.   Would it go to reimburse you for money that

15  you had loaned to SearchTech Medical?

16      A.   I don't know.  It will be against my payrolls

17  for the IRS which I pay taxes on that.

18      Q.   So 8/25/2009, follow me here where it says

19  loan to Deepak Chopra from the payroll account minus a

20  thousand dollars.

21           That's SearchTech paying you a thousand

22  dollars from the payroll account?

23      A.   For my services.

24      Q.   For?

25      A.   For my services.

1    Q.   For your services?

2    A.   Yes.

3    Q.   So under the memo where it says loan to Deepak

4    Chopra, what does that mean?

5    A.   Memos.  I don't know.  Memos can be

6    misleading.  You should look at the account

7    information.  1068 is payroll account and the

8    accountant can explain that to you.

9    Q.   So again we'd have to ask Mahbub Alam?

10   A.   Yes, absolutely.

11        MR. CAMPAGNA:  The next exhibit is Exhibit

12   105.

13        (EXHIBIT 105 WAS MARKED FOR IDENTIFICATION.)

14   BY MR. CAMPAGNA:

15   Q.   Exhibit 105 is a Quickbooks for SearchTech

16   Medical, Inc. transactions by account as of

17   December 31st, 2010.

18        Do you recognize this document?

19   A.   No.

20   Q.   I want to know if you're familiar with any of

21   the terms on the document.  In the upper left-hand

22   corner of the first page, it says "deferred salary

23   repayment."

24        Are you familiar with that term?

25   A.   Deferred salary repayment means salary not

1  taken being paid now.

2       Q.  So there's dates here that span from

3  July 21st, 2006 to May 18th, 2007.

4            Do you recall -- it's on the first page.

5            Do you recall whether you had deferred salary

6  repayments in 2006 and 2007?

7       A.  I may have.

8       Q.  Any reason to think that the information on

9  SearchTech Quickbooks on the first page of this exhibit

10  is inaccurate?

11      A.  I don't know that.  I am not the accountant.

12      Q.  And then the second page there's the term

13  again in the upper left-hand corner "executive

14  salary."  And the name on all of these is your name and

15  it extends on to the third page.  So it goes from

16  September 10th, 2007.

17            Do you see that on the top of page 2?

18      A.  Yes.

19      Q.  To 11/23/2009, the bottom third of the third

20  page.  Do you see that there?

21      A.  Yes.

22      Q.  So this is your salary for being an executive

23  of SearchTech Medical; is that correct?

24      A.  Yes, yes.

25      Q.  $196,743.23; right?

535

1     A.   Yes.

2     Q.   Below that and on the left-hand side of the

3  page below where it says the $196,000 figure to the

4  left-hand side, it says "salary."  Again your name is

5  under the name and this proceeds on to page 4 and to

6  page 5.  It spans from 9/26/2003 to 8/31/2007.

7          Do you see that there?

8     A.   Yes.

9     Q.   Total salary $159,615.14?

10    A.   Yes.

11    Q.   The figures that we've identified, the 50,000

12 approximately on page 1, 196,000 approximately on

13 page 3 and the 159,000 approximately figure on page 5,

14 any reason to think that those figures do not reflect

15 the salaries that you received from SearchTech?

16    A.   I don't -- I cannot answer the question.  I'd

17 have to look at my W-2.

18    Q.   When you look at the approximate amounts of

19 deferred salary from 2006 to 2007, does that seem about

20 right?

21    A.   I can't recollect.

22    Q.   Okay.  How about for the executive salary from

23 September 2007 to November 2009; about 196,000 seem

24 accurate?

25    A.   For three years?

1     Q.   Well, it's from September of 2007 to November

2     2009.

3     A.   Two years.

4     Q.   It's for two years and one month.  It's

5     approximately $100,000 a year during that.

6     A.   Yeah.  But 2009 the salary was much less.

7     Q.   Is that reflected on this sheet?

8     A.   On my W-2s.

9     Q.   Is it reflected in these Quickbooks?

10     A.   I don't know.  I didn't make these transaction

11     sheets.  I only get the W-2s.

12     Q.   It shows here on the right-hand corner many

13     1,643.84 transactions in 2009.  Page 3 of the exhibit.

14     A.   What does it show?

15     Q.   Well, I'm just looking at the figure.

16     $1,643.84 under the line "amount," under the column

17     "amount."

18     A.   196 you mean?

19     Q.   Right.  I was looking at the whatever this is,

20     the weekly or biweekly payments.

21     A.   Biweekly.

22     Q.   1,643.84.  Is that what you mean it was much

23     less in 2009?

24     A.   Yes ,much less in 2009.

25     Q.   So above that for 2008, if you look at the

537

1    September 2008 entries, it's $2,769.23.

2        A.   Yes.

3             MR. CAMPAGNA:   Let's take a five-minute break.

4             (Recess taken.)

5             MR. CAMPAGNA:   We're back on the record.

6             We'll mark the next exhibit Exhibit 106.

7             (EXHIBIT 106 WAS MARKED FOR IDENTIFICATION.)

8    BY MR. CAMPAGNA:

9        Q.   Do you recognize this document?

10       A.   No.

11       Q.   It appears to be an e-mail from Parveen Gill

12   dated Thursday March 10th, 2005 to Iqbal Husain with a

13   CC to Gary Wimp, Deepak Chopra, Michelle and Serena.

14   The subject line says "transfer."  Attachments PL

15   03/11/2005.  It looks like profit & loss statement.

16   That's also provided here and Iqbal's funding sheet --

17       A.   Yes.

18       Q.   -- is provided as well.

19            Do you see that?

20       A.   Yes.

21       Q.   Do you recall in 2005 obtaining an e-mail such

22   as this with Iqbal's funding sheet?

23       A.   No.

24       Q.   And a profit & loss statement?

25       A.   I don't recall this particular document, no.

Case: 10-05196   Doc#TORRANCE SHORTHAND REPORTING (866) 1769 DEPO Page 31
of 39

1      Q.   In 2005 do you recall receiving a copy of a

2   funding sheet from -- from Parveen Gill regarding --

3           MR. CAMPAGNA:   Can you repeat the first part

4   of my question.

5           THE COURT REPORTER:   "Question:   In 2005 do

6           you recall receiving a copy of a funding sheet

7           from Parveen Gill" --

8   BY MR. CAMPAGNA:

9      Q.   -- regarding Iqbal Husain?

10     A.   I don't recollect.   I may have.   I don't

11  recollect.

12     Q.   The e-mail says it's from Parveen Gill.   It's

13  signed by Donna Nunez.

14          Was that unusual for Donna Nunez to be sending

15  an e-mail from Parveen Gill's account?

16     A.   Gary was running the company.   So I'm sure he

17  authorized her to do that.

18     Q.   Gary Wimp?

19     A.   Yes.

20     Q.   And the Michelle that's identified here?

21     A.   That was HR manager.

22     Q.   You don't know her last name; right?

23     A.   No.

24     Q.   And the Serena is Serena Bem?

25     A.   Yes.

1      Q.  She's one of the accountants?

2      A.  I don't know if she was an accountant.  She

3   was helping out.

4          MR. CAMPAGNA:  Mark the next exhibit

5   Exhibit 107.

6          (EXHIBIT 107 WAS MARKED FOR IDENTIFICATION.)

7   BY MR. CAMPAGNA:

8      Q.  This is an e-mail from Parveen Gill signed by

9   Donna Nunez dated Thursday, March 17th, 2005 to Iqbal

10  Husain copying Deepak Chopra, Gary Wimp, Serena and

11  Michelle regarding a funding request and attaching

12  Iqbal's funding sheet.

13         Do you recognize this e-mail?

14     A.  I'm sure I received it, but I don't recognize

15  it and recollect it.

16     Q.  Okay.  If you had received such an e-mail like

17  this with an attachment of Iqbal's funding sheet, would

18  you have reviewed the e-mail?

19     A.  No.

20     Q.  Would you have reviewed the funding sheet?

21     A.  No.

22     Q.  When Gary Wimp was running the company and

23  e-mails such as Exhibits 106 and 107 were being sent to

24  you, do you recall requesting such e-mails be sent to

25  you?

1  A.  For information purposes only.  They were sent

2  to me for information purposes only.

3  Q.  So you requested that the funding sheets be

4  sent to you for information purposes only; is that

5  correct?

6  A.  All correspondence -- yes.

7  Q.  What information purposes were you seeking

8  when this type of information was sent to you?

9  A.  There was a problem on the funding sheets that

10  would be highlighted and I would look at it.

11  Q.  So if you look at -- back at Exhibit 106 and

12  turn to the funding sheet, there are highlights.  There

13  are what appear to be highlights.

14  Is that what you're referring to?

15  A.  No.  I'm looking at the first page.

16  Q.  You're looking at the e-mail?

17  A.  I looked at the e-mail.  And if there was any

18  information that was out of the ordinary, then I would

19  get involved with it, and Gary.

20  Q.  So you required Gary to itemize problems with

21  the funding?

22  A.  If there were any, yes.

23  Q.  And you required them to do that through

24  e-mail?

25  A.  If there were any problems, yes.

541

1    Q.   Again, if you turn to the funding sheet, there

2    are highlights on it.   In other words, this spreadsheet

3    has darkened areas offset from the others.

4    A.   Yes.

5    Q.   Was that also a practice of SearchTech Medical

6    to offset certain line items on Iqbal's funding sheet?

7    A.   I do not know that.

8    Q.   And then if you look back to 107, it says:

9    "Iqbal, please see attached report for AR funding week

10   ending 3/18/2005 and transfer $23,461.21 to STM account

11   as soon as possible."

12   Does that statement identify a problem that

13   you were alluding to earlier regarding the funding?

14   A.   No.

15   Q.   How about the statement on Exhibit 106?

16   A.   No.

17   Q.   And even on 106 where it says, "I have made

18   collection calls and I am expecting a lot of payments,"

19   is that a problem, that SearchTech Medical had to make

20   collection calls?

21   A.   No.

22   Q.   Where it says, "Some that we will be receiving

23   is for San Jose Medical, UCSF and O'Connor."

24   A.   Not a problem.

25   Q.   Were you generally familiar with the San Jose

1  Medical, UCSF and O'Connor accounts?

2      A.  No, not in particular.  But collection calls

3  were always made.

4      Q.  So you're not familiar with them in

5  particular.  How about in general?

6      A.  They were clients.

7      Q.  Looking back at Exhibit 107 to the funding

8  sheet, again, this has highlights and I take it your

9  testimony is that you're not familiar with why those

10  items were highlighted there?

11      A.  I don't look at them.  I didn't look at them.

12      Q.  You didn't look at them?

13      A.  No.

14      Q.  You didn't look at them ever?

15      A.  Only if there's a big problem.

16      Q.  And from what you can tell in looking at the

17  funding sheet in Exhibit 106, are there any big

18  problems?

19      A.  I don't know.  I didn't look at them.

20      Q.  You said that you'd look at them when there's

21  a big problem.

22      A.  I look at the front page of the e-mail and

23  they notified a problem on that, if there was a

24  problem.

25      Q.  Only if it's identified on the e-mail, then

543

Case: 10-05196   Doc#: 106-2   Filed: 07/23/12   Entered: 08/10/12 15:43:19   Page 36 of 39

1    you would look at the funding sheet?

2        A.   And investigate.  I worked with Gary.

3        Q.   And what?

4        A.   With Gary.  I would talk to Gary about it.

5             MR. CAMPAGNA:   The next exhibit is

6    Exhibit 108.

7             (EXHIBIT 108 WAS MARKED FOR IDENTIFICATION.)

8    BY MR. CAMPAGNA:

9        Q.   Do you recognize this document?

10       A.   I don't recognize the document, but I can --

11   it's correspondence.

12       Q.   Do you recall the correspondence?

13       A.   No.

14       Q.   So it's an e-mail dated Thursday, March 17th,

15   2005 from Gary Wimp to Iqbal Husain at his e-mail

16   husain@yahoo.com and Parveen Gill copying Deepak Chopra

17   regarding a weekly transfer.

18            And it says, "I understand your thinking on

19   Adecco."

20            You're familiar with that account; right?

21       A.   Yes.

22       Q.   Does this e-mail flag any of the problems that

23   you were alluding to earlier that you would like to be

24   informed of?

25       A.   It's not a problem.  It's an e-mail that says

544

Case: 10-05196   Doc #: 186-2   Filed: 07/20/12   Entered: 08/08/12 15:42:18   Page 37 of 39

1    they are doing better in the time to pay, which is

2    faster.

3         Q.   And where it says, "The payment issue seems to

4    be with the old invoices and they seem to be doing

5    better with the payment of the newer invoices"; is that

6    correct?

7         A.   That's correct.

8              MR. ISON:   Well, the document speaks for

9    itself.

10   BY MR. CAMPAGNA:

11        Q.   That's what you were -- that's the part that

12   you were pointing out to me; is that right?

13        A.   Yes.

14        Q.   Then it says, "Our subcontract with Adecco

15   will expire this summer and I do not intend to renew at

16   this point."

17             Do you recall having conversations with Gary

18   Wimp about the subcontract with Adecco expiring?

19        A.   Yes.

20        Q.   And the decision not to renew?

21        A.   We never made a decision not to renew.  That

22   was his way of saying he didn't want to continue.  We

23   never made a decision.  We stayed with Adecco after

24   that.

25             MR. CAMPAGNA:   You did.

1           The next exhibit is Exhibit 109.

2           (EXHIBIT 109 WAS MARKED FOR IDENTIFICATION.)

3  BY MR. CAMPAGNA:

4      Q.  It's an e-mail from Parveen Gill dated

5  Wednesday, March 23rd, 2005 to Iqbal Husain copying

6  Deepak Chopra, Serena, Gary Wimp and Michelle.  Subject

7  is funding request.  Attachments:  Iqbal's funding

8  sheet for 3/25/05.

9           Do you recognize this document?

10     A.  No.

11     Q.  Are there any red flags in the e-mail that

12 would indicate to you that this is a funding sheet that

13 you would need to read?

14     A.  No.

15     Q.  How do you know that?

16     A.  It's very clear that they're picking up the

17 invoices.  They are going to get current.

18     Q.  So this is not a funding sheet that you would

19 have looked at; is that correct?

20     A.  No.

21          MR. CAMPAGNA:  The next exhibit is Exhibit

22 110.

23          (EXHIBIT 110 WAS MARKED FOR IDENTIFICATION.)

24 BY MR. CAMPAGNA:

25     Q.  It's an e-mail from Gary Wimp dated Thursday,